1820.

GRAY
v.
MURRAY.

---

GRAY, <i>Executrix of</i> GRAY, <i>against</i> J. B. MURRAY.

After a hearing and final decree in a cause, a witness cannot be re-examined to explain or correct his testimony, taken on his examination in chief, and read at the hearing, unless, perhaps, under very special circumstances.

A voluntary *ex parte* affidavit of the witness, to explain and correct a mistake in his former testimony, cannot be read at a rehearing of the cause.

*May 29th.*

AT a rehearing of this cause,(*a*) before the Chancellor, at his chambers, by consent,

S. *Jones*, for the defendant, moved for leave to read as

(a) Vide, S. C. vol. 3. p. 167.

evidence, the deposition of *James B. Murray*, showing and correcting a mistake in his testimony, taken on his examination in chief, and read at the former hearing. The deposition was taken before a commissioner, on the 21st of June, 1819. He cited, in support of the motion, 1 *Johns. Ch. Rep.* 526. 2 *P. Wms.* 646. *Dickens*, 677. 2 *Madd. Ch. Pr.* 439. 10 *Ves.* 236.

1820.<br>GRAY<br>v.<br>MURRAY.

*B. Robinson*, contra.

THE CHANCELLOR. The deposition now offered to be read was not taken upon a re-examination before the examiner, nor founded upon a previous order, but is a voluntary *ex parte* affidavit, made at the suggestion of the defendant, a year and a half after the hearing and decree, and nearly six months after the coming in of the Master's report, consequent upon the final decree. The witness states, in his deposition, that the alleged mistake in his examination in chief, before the examiner, was not discovered until some time after the former hearing, and that *he was applied to by the defendant*. That, upon that application, he proceeded to review his deposition, and having investigated the matters therein stated, he became satisfied that his former deposition was inaccurate ; and the deposition now offered explains the inaccuracy, and gives what he considers a correct statement of facts and circumstances, according to his recollection and belief. It strikes me that the admission of this deposition, as evidence in the cause, under all the circumstances, would be unprecedented and dangerous. An order of the Court ought to have preceded the taking of this deposition ; and as the alleged error lay not in one or more particular and precise words, which might have been corrected in open Court, or before a master, the deposition or examination ought to have been taken in the regular way, before the examiner upon the settled interrogatories ; or, at any rate, a cross exa-

1820.

GRAY
v.
MURRAY.

mination ought to have been afforded to the plaintiff. This was the course in *Kirk* v. *Kirk;* (13 *Ves.* 285.;) and before any such re-examination, there ought to have been an inquiry into the circumstances attending the alleged mistake, and, perhaps, it might have been necessary to have had the examiner, as well as the witness, examined, *ore tenus,* in Court. The existence of the mistake ought to have been made out previously, to the perfect satisfaction of the Chancellor, as a ground for the subsequent amendment and correction of the same testimony. It would be extremely hazardous, except in a very special case, to allow of such amendments, after the testimony has been heard, and critically discussed in court, and the bearing and effect of every part of it understood and judicially settled. It opens a door to fraud and perjury, by holding out, or encouraging inducements to supply insufficient evidence, or to withdraw or explain away that which has been oppressive. In this instance, the language of the testimony proposed to be altered is clear, distinct, and precise, and the mistake is discovered only upon the suggestions of the defendant, after the cause has been heard, and decided against him.

There are no cases that have permitted an interference with the testimony at such a late period, and under such an aspect of things.

In *Griells* v. *Gansell,* (2 *P. Wms.* 646.) Lord *King* allowed a deposition to be amended after publication, and before hearing; but it appeared to the Court that the witness had made a mistake, and both the witness and the examiner had attended and been examined in Court, as to the fact of a mistake. So, in *Darling* v. *Staniford,* (*Dickens,* 358.) the witness was examined in Court by the Master of the Rolls, and he was satisfied of the mistake, and how it arose, before the witness was permitted to amend his deposition. Again, in *Rowland* v. *Ridley,* (1 *Cox's Cases,* 281.) a deposition of a witness was permitted to be amended upon a clear and material mistake, shown by his affidavit, and that

of another person; and Lord *Thurlow* observed, that "it was a matter of great delicacy, to alter a deposition after publication, and nothing could justify it but *the strongest conviction* of a mistake having been made." The cases are those in which the application has been made after publication, and before hearing; (see *Ingram* v. *Mitchell, 5 Ves.* 297. *Kirk* v. *Kirk,* 13 *Ves* 285. Lord *Abergavenny* v. *Powell,* 1 *Merivale,* 130.) but in *Sandford's* case, (1 *Ves.* jun. 398.) a witness was examined after the decree, and it was merely because he had been inadvertently examined before, without a sufficient release, which did not cover a very small debt against him; and it is to be observed, that the application was not to correct a mistake in his testimony. It was only to retake the deposition, after he had been made competent by a better release. There never was a re-examination permitted, merely to alter and correct testimony, after the cause had been heard and discussed, and decided upon the very matters of fact to which that testimony referred. It would be setting a most alarming precedent, and would shake the fundamental principles of evidence in this Court.

Motion denied.