BARRINGER & RHODES v. SNEED.

1 Where the subscribing witness to an instrument resides out of the State, his evidence may be dispensed with in establishing the instrument.
2. Where a written contract is not ambiguous in its terms, and there is no fraud, mistake, nor other sufficient cause of exception, it cannot be varied, explained or added to by parol evidence.
3. After the dissolution of a firm, the declaration of a defendant that his co-defendant was a copartner and jointly bound with him, is no evidence.
4. The rule is well settled that the admissions of a partner, after the dissolution, bind himself only.

JAMES SNEED, brought an action of assumpsit in Tuscaloosa Circuit Court, against M. Barringer and S. Rhodes, as copartners, for damages for the non-performance of a contract in writing, which he alleged was lost, and of which he produced a copy as follows: "An article of agreement between James Sneed of the one part and Matthew Barringer of the other: witnesseth, that the said Matthew doth agree to load James Sneed's boat to Mobile with corn, at the rate of twenty five cents per bushel, freight to be paid at the place above mentioned; and also to load the boat with two hundred barrels and more if convenient, which freight is to be delivered at Tuscaloosa, at four dollars per barrel; as witness our hands and seals, the 29th day of May, 1820.

JAMES SNEED,<br>MATTHEW BARRINGER."

Attest: CONST. P. SNEED.

This contract he alleged was made by Barringer on account of himself and the defendant Rhodes, and that they were copartners and jointly liable for its performance. The defendants pleaded the general issue.

The cause was tried at the fall term, 1828, before the Honorable Judge White. The plaintiff proved by a witness named Marr, that the original contract was lost, and offered a copy in evidence, which Marr said he had drawn from the original and given to the plaintiff. The defendants objected to the sufficiency of the proof of the contract, because the subscribing witness was not produced, nor his absence accounted for. The plaintiff then proved that the subscribing witness lived in the State of Tennessee; it appeared he was the son of the plaintiff, who also resided there, that his place of residence was known to the plaintiff, and that no effort had been made to obtain

26

his evidence by deposition or otherwise. The Court overruled the ojections of the defendants, and suffered the copy to be read to the jury. The defendants further objected to the reading of said contract, because it varied from the declaration, but the Court overruled the objection and permitted evidence to go to the jury that the defendant Rhodes was a reputed partner of the firm of Barringer & Rhodes in a grocery store after the time the said contract was made, which was also objected to. The plaintiff further offered to prove by a witness the declarations of Barringer, made after the dissolution of the copartnership, to establish its existence. This was also objected to, but the objection was overruled.

The defendants offered to prove by one Jacob Putt, that at the time of the execution of the contract, it was stipulated between the plaintiff and Barringer, that the plaintiff's boat should reach Mobile in eleven days from the date of the contract. But because this evidence was not in writing the Court rejected it, and would not permit it to go to the jury, otherwise than as shewing what the parties considered a reasonable time for the boat to reach Mobile, or to shew a new contract or a modification of the first. The defendants then offered in evidence the declarations of the plaintiff, immediately before and after the execution of said contract, in the presence of Barringer and others, that he considered himself obligated to reach Mobile with his boat in ten days after the date of the contract. This the Court rejected in any other view than as stated above.

The defendants requested the Court to give the following instructions to the jury: 1st. That if they believed from the evidence there was a subsequent modification of the contract by the parties, and that the plaintiff did not comply with his contract as modified, it forming a precedent condition, he could not recover. 2d. That if they believed that subsequent to the written contract, the parties formed a new contract by parol, that the plaintiff could not recover in this action.* 3d. That if they believed from the evidence that the plaintiff was bound to have his boat in Mobile within eleven days from the date of his contract, and that the boat did not arrive there within that time, the defendants were not liable; and 4th. That if they believed that Rhodes was the acting partner of the

---

NOTE.—There were no common counts in the declaration, and no count formed on such a subsequent contract.

firm,.and that the plaintiff only contracted with a view to the sufficiency and personal liability of Barringer, that then the plaintiff could not recover in this action. As to the first, second and third points, the Court charged the jury, that as the contract sued on was not under seal, it was competent for the defendant to prove a subsequent. contract by parol, or a modification of the first, and that if. such modification contained a condition precedent, binding· the plaintiff to reach Mobile within eleven days, or any other specified time, the plaintiff could not recover, unless he proved a performance of such condition on his part. And if the contract was entirely new and intended to re-scind the first, that it should have been sued on. As to. the fourth point,. the Court charged the jury, that the· plaintiff's rights accrued under said contract, according to its legal effect, in connexion with the other facts of the· case; and that although but one of the partners was named in the contract, yet if it was in relation to partnership matters, and the other partner assented to it afterwards,. he was bound.. These several decisions were excepted to by the defendants, and the jury having found a verdict against them, they now here assign these several matters, as error.

BARTON & STEWART, for the appellants, argued and cited the following authorities: 10 Johnson's Reports, 66. 3 Ibidem, 436. 15 Ibidem, 424. 3 Espinasse's Cases, 108. Marshall, 189.

ELLIS, argued for the appellee, and referred to Espinasse's Nisi Prius, 783. 7 Term Reports, 266. 1 Johnson's Cases, 230. 4 Johnson, 267. 11 Massachusetts. Reports, 311. Gow on Partnerships, 255, 29. 3 Starkie's Evidence, 1096, 995, 1002, 1007. 11 Johnson, 201,. 1 Peters.

By JUDGE LIPSCOMB. In this case a great many points have been made by the counsel for the plaintiffs in error. We shall however dispose of those we consider material, without examining those of minor importance. The first objection taken to the record is, that it shews that the Court below admitted secondary evidence to prove a written contract. The bill of exceptions in the case does not assume to set out the whole of the testimony, but it shews that on its being proven that the original contract

*(margin note:)* JULY 1830.

Barringer & Rhodes v. Sneed.

JULY 1830.

Barringer & Rhodes
v.
Sneed.

between the parties was lost, the Court permitted a paper, that a witness swore was a true copy of the original, to be read in evidence. It is objected, that as there was a subscribing witness to the original contract, he should have been produced; it was proven that the subscribing witness was the son of the plaintiff below, and lived in the State of Tennessee. The rule of evidence was formerly very strict, as to the admissibility of any secondary proof of an instrument of writing. In the English Courts, for a great length of time, the rule was considered as well settled, that the evidence of the subscribing witness must be produced, if he was living; so that to let in proof of a written contract in any other way, it had first to be proven that the subscribing witness was dead, or circumstances from which his death would be inferred; in such case, proof of the hand writing was resorted to as the next best evidence. But in later times, the hardship and oppression of this rule has been so obvious, as to produce a great relaxation of its rigour; this too has been effected without violating any acknowledged principle of the law of evidence, the rule still prevailing in all its active influence, that the best testimony, which the nature of the case will admit of, must be produced. The rule now is, that if the subscribing witness is beyond the jurisdiction of the Court, so far as his testimony is concerned, he may be treated as though he were dead. The reasonableness of this rule is so clear, it is a matter of surprise that its correctness should ever have been questioned. For why should a party be deprived of his rights for the want of the testimony of a witness. When the forum afforded him no means of commanding such testimony, and while there were other means of proving the same facts as fully and satisfactorily to the mind, as if the subscribing witness himself were present and occupied the stand. In the argument it was urged that it did not appear that the original was proven. It is true that the mode in which it was proven is not shewn by the bill of exceptions, but it is shewn that there was proof of the loss of the original, and proof that the paper offered was a copy. Now in favor of the judgment, we must presume that the two substantive facts of the loss of the original, and the faithfulness of the copy were proven according to the acknowledged rules of evidence. The inability to procure the evidence of the subscribing witness, although it would much enhance the difficulty of proving a written contract, after the original has been lost, would

certainly not preclude a resort to other modes of proof; <span>JULY 1850.</span>
and a sworn copy of the original, would be that kind of
secondary evidence, which would be most favorably re- Barringer &
ceived, especially when we are bound to infer that the Rhodes
witness swearing to the copy, had adequate means of know- v.
ing the truth of the fact to which he testified. On this Sneed.
point then we conceive there is no error.

It is further assigned for error that the Court refused to
permit the defendants below, to prove by oral testimony,
that the boat of the plaintiff was by agreement, to be at
Mobile in eleven days. By referring to the written con-
tract on which the action was brought, it is very obvious
that the testimony attempted to be introduced by the de-
fendant below, would have materially affected the terms
in it expressed. How far oral testimony can be admitted
to vary the terms of a written contract, is a subject on
which the adjudications have not been uniform in the Uni-
ted States. For the reason that there is no Court of Chan-
cery in some of the States; and in such States, a disposi-
tion has been cherished, until it has grown into a rule of
practice, to admit any testimony that would be a ground
of relief in a Court of equity. But in England and most
of the States of this union, the current of judicial deci-
sions has been uniform and uninterrupted, and the rule
that oral testimony shall not be received, to alter or con-
trol the terms of a written contract, has been fully acknowl-
edged. It is true this rule admits of some exceptions,
without disturbing its generality; a contract in writing
may be subsequently modified by a parol agreement. This
could be done without infringing the rule. The written
contract would be left inviolate, as expressing the true
meaning and intention of the parties at the time it was
entered into. In like manner if terms of a dubious or un-
certain import have been employed in the written contract,
parol evidence has been received to interpret the meaning
of such terms.

In some cases too, if a fraud has been practiced by one
of the parties, in not writing or reading the contract faith-
fully, or by promising to make alterations, and failing to
do so, Courts of law have sometimes received parol evi-
dence of such facts; but it is not usual in such cases to re-
sort to a Court of Chancery for relief, if such a Court is
accessible to the party aggrieved. Customs incidental to
a particular class of contracts, have been permitted to be
proven by parol, for the purpose of influencing the writ-

JULY 1830.

Barringer &
Rhodes
v.
Sneed.

*a* 1 Peters
Page 92.

ten contract. The case in first Peters,[a] is to be referred to this class of cases. None of the exceptions we have noticed can be brought to aid the attempt to produce parol testimony to vary the contract under consideration. There are no doubtful or ambiguous terms employed; there is no imputation of fraud or mistake, and there was no attempt at proving any custom that would impose its incidents on this contract.[b] But it might well be doubted if the written contract had embraced the condition offered to be proven by parol, that is, that the boat was to be at Mobile in eleven days, if it would not have been an independent one, for which the party aggrieved would be left to his separate action.

The only remaining point to be considered, is the correctness of admitting the declarations of Barringer to be given in evidence, to prove that Rhodes was a copartner, after the copartnership, if any had existed, had been dissolved. It was formerly held that an acknowledgment of one of the firm, after the firm was dissolved, could take a case out of the statute of limitations and revive the debt against all the members thereof; but the true doctrine is now held to be, that such subsequent promise will only bind the person making it. When the former rule prevailed, and when a strong disposition was manifested by the Courts, to extend the influence of the acts of one of the members of a firm, after its dissolution, to every transaction in which the firm during its existence had been engaged, no adjudication even then, went so far as to authorize one of the members, after the firm had been dissolved, to create for the other members a new liability. More enlightened views now prevail, and rules more consonant with reason, have by a variety of decisions, regulating and diffusing the respective liability of the members of a firm after its dissolution, been established. In the case under consideration, if the declarations of Barringer after the dissolution of the supposed firm of Barringer & Rhodes could be admitted, to prove the fact of the former existence of such a firm, it would hold out to Barringer the powerful consideration of his own interest, to mould those declarations regardless of truth, so as to make Rhodes a joint debtor with himself. If he could by his own declarations, prove that at the time he entered into the contract with Sneed, Rhodes was his partner and jointly interested in the contract, he would thereby divide the responsibility he had incurred. But independent of the objec-

'tion to Barringer's declarations in this case on the score of interest, we take it to be the well settled rule at present, that the declarations of a partner after the dissolution of the firm, can only bind himself. For the admission of this testimony, the judgment must be reversed and the cause remanded.

JULY 1830.

Barringer & Rhodes v. Sneed.

Reversed and remanded.

JUDGE WHITE, having presided below, and JUDGE COLLIER having been of counsel, did not sit.