## HEIRS, ET ALS. OF PUGH v. CURRIE.

1. Where real *estate* is purchased by a commercial partnership with the partnership funds, for the purpose of sale, to pay the debts of the firm, it will be considered, in equity, as part of the stock in trade, and therefore, as personalty, *will go to* the surviving partner.

2. In such a case it will make no difference that the title is in the deceased partner alone, his heirs will be considered trustees for the survivor.

ERROR to the Chancery court of Barbour.

The bill was filed by the defendants in error, and charges that a partnership existed between themselves and James Pugh, deceased, in the mercantile business, under the firm of James Pugh & Co.—that the business was unprofitable, and the firm largely in debt; that for the purpose of acquiring means to pay off and satisfy said debt, the defendant, Pugh, without their knowledge, but with the money of the firm, and intended for its benefit, entered at the land office in his own name, nine tracts of land, which are described, and in the purchase vested the sum of eleven hundred and eight dollars twenty-three cents; that the debts of the firm have not been paid, and that they have been compelled to pay large sums out of their individual property, on account of the partnership debts; that Pugh has departed this life, leaving a widow and children; that the widow and one Landingham, administered on the estate; that the widow subsequently married one Revenbach, who in right of his wife became co-administra-

tor with Landingham ; that they have reported the estate of their intestate insolvent, and filed a petition in the county court praying a sale of his lands, and that the lands are insufficient to pay the outstanding debts of the firm. The prayer of the bill is for a sale of the lands to pay the firm debts, and for general relief.

Revenbach and wife answer the bill, and deny any knowledge of the partnership, as charged in the bill ; they admit the estate of the deceased to be insufficient to pay the debts of the estate without a sale of the land ; that a decree was obtained from the orphans' court to sell the land mentioned in the bill before the filing of the bill, and that the same was sold under the decree ; that the complainant aided in procuring the lands to be sold; was present when they were sold, and did not interpose his claim; and all knowledge as to the funds with which the lands were purchased, and know nothing of the state of the firm accounts. They also rely upon a decree of dismissal to a previous bill filed by the complainant, having the same object in view as the present bill, and demur to the bill for want of equity.

The other administrator, Landingham, by his answer, states that he always understood there was a partnership existing between the deceased and complainant and one McKenzie, in the sale of merchandize and negroes; does not know the state of the firm accounts, but insists that a large amount of debts and effects of the firm came to the hands of the complainant ; admits that the estate of Pugh has been declared insolvent, and the lands of deceased sold by a decree of the court ; that complainant did not forbid the sale, but became the surety of the purchaser of the land ; admits that the lands were entered in the name of the deceased, but whether purchased with his own funds, or of the firm, does not know. There is also a demurrer to the bill.

There is also the usual answer of the guardian *ad litem* of the minors.

The proof, which is quite voluminous, shews that the partnership existed as stated in the bill ; that the business was unprofitable, and that the complainant has been compelled to pay a large sum of money on account of the firm ; that the lands were entered by the deceased with the money of the firm, and for the purpose of paying the debts of the firm ; and that the complainant was present at the sale of the land under the decree of the county court, and forbade it.

The chancellor decreed a sale of the land, from which decree this writ is prosecuted.

The assignments of error are,

1st. That there is no equity in the bill.

2d. The court erred in the decree made.

GOLDTHWAITE, for plaintiff in error, cited 7 Vesey, 453 ; 9 ib. 500 ; Gow on Part. 54 ; 1 R. & M. 45 ; 2 Edwards, 28 ; 6 Yerger, 20 ; 4 McCord, 519 ; 15 Johns. 159 ; 2 Rand. 183.

ORMOND, J.—Real estate held by a partnership for partnership purposes, is as between the partners themselves and their creditors, considered and held as mere personalty ; but whether it is to be so treated upon the death of one of the partners, and the right to vest in the surviving partner, or whether to give it that effect there must not be an agreement between the partners, by which the land is to be considered as stock, and thus be converted into personalty, appears to be considered a *doubtful* question at this day in England. [See Thornton v. Dixon, 3 Bro. C. C. 199, where the latter was held to be the true rule, and the note of Mr. Belt ; also Story on Partnership, 128 ; Gow on Part. 54 ; Fereday v. Wightwick, 1 Russel & M. 45 ; Broom v. Broom, 3 M. & K. 443 ; Phillips v. Phillips, 1 M. & K. 649.]

The facts proved in this case, however, place *it* beyond the pale of this controversy. It appears from the evidence that the lands were purchased with the funds of the partnership, for the purpose of sale, to pay the debts of the firm, and were partially improved to enhance their value and give them a ready sale. The effect of this agreement is, that the land must be considered as a part of the stock in trade, and is thereby converted into personalty, and as such, belongs to the surviving partner to enable him to pay the debts of the firm.

It can make no difference whatever that the land was entered in the name of the deceased partner—the heirs will, in a court of equity, be considered as trustees of the surviving partner. Let the decree of the chancellor be affirmed.