# REPORTS

OF

## CASES ARGUED AND DETERMINED

### AT JANUARY TERM, 1850.

LANG'S HEIRS *vs.* WARING, Survivor.

1. Does the real estate of a partnership, in the absence of an agreement or other act giving it the impress of personalty, descend to the heirs or personal representatives of the deceased partners—QUERE?

2. The interest of the survivor in his deceased partner's share of real estate held in the name of the firm, is equitable merely, and one who purchases it under a judgment and execution at law against the survivor acquires no such title as a court of equity will enforce.

3. One who is neither a party or privy to a proceeding in equity, is not bound by it.

4. One partner without the consent of the other has no authority to endorse a note for the benefit of a third person in the partnership name, and such endorsement imposes no liability on the firm.

5. A surviving partner has not the power to make a note in the partnership name, even in substitution of a pre-existing debt of the firm.

6. A mortgage or deed of trust on the real estate of the firm, executed by a surviving partner to secure the payment of an individual liability, creates a lien only to the extent of his interest in the property.

7. This court, upon reversing the decree of the chancellor in favor of the complainant and dismissing the bill, will dismiss it without prejudice, where the justice and equity of the case may seem to require it.

Error to the Chancery Court of Mobile. Tried before the Hon. Anderson Crenshaw, Chancellor.

THE bill in this case, which was filed by the defendant in error, as surviving partner of the firm of Bartlett & Waring, alleges that said Bartlett died in 1844, leaving the complainant in possession of the copartnership property as surviving partner,

its affairs being still unsettled; that there existed also in Mobile a copartnership between Colin C. McRea and Willis Lang, under the name and style of McRea & Lang; that said Lang died in 1837, that said McRea as surviving partner became possessed of the effects of said firm, and proceeded to wind up its business as far as its effects would permit; that said firm of McRea & Lang, at the time of the death of Lang, owned a store-house in Mobile and the lot on which it stands, which lot was in 1832 conveyed to them jointly by one Isaac Mecker; that said store-house was purchased with copartnership funds, for copartnership purposes, and was used by the firm as their grocery and dry goods store; that said firm owned other property, but not enough to pay its debts; that said McRea became insolvent and died in eighteen hundred and ———; and that Catharine Lang, the widow of Willis Lang, administered on the estate of her husband, the said Willis Lang. The bill further states that the firm of McRea & Lang were indebted to Bartlett & Waring, as endorsers of two promissory notes for $6,776 66 each, due the 8th March, 1837, and that they sued Colin McRea as surviving partner and recovered judgment against him, on the 21st May 1837, for $7,435 21 on one note, and on the 1st June 1838, for $7,442 75 on the other; that executions issued on said judgments and were levied on the said store-house and lot and one slave, being all the property of said firm of McRea & Lang that could be found, and which was not sufficient in value to satisfy the said executions; that on the first Monday in March 1839, said real estate was regularly sold by the sheriff to Bartlett & Waring, for $9,860, and that they received a deed from the sheriff therefor on the 4th March 1839, and immediately went into possession thereof.

The bill further states that said executions against McRea were returned "no property" as to the balance that remained due on them after said sale, and that thereupon Bartlett & Waring instituted suits against Catharine Lang, administratrix of Willis Lang, to recover the said balance, upon which they obtained judgments, that were finally compromised between the parties, by the said Catharine paying to Bartlett & Waring the sum of $ —— in full discharge of said balance:

The bill further states, that in addition to the title derived from the sheriff to said real estate, Bartlett & Waring acquired

another title by purchase, thus: "McRea & Lang were indebted to one James F. Bates in the sum of $4,633 88, which being unpaid, on the 6th Dec. 1838, McRae as surviving partner conveyed said store-house and lot to said Bates, to secure the payment of his debt, by deed with power of sale: on the 4th day of May ——, said Bates in pursuance of said deed sold and conveyed said property to John Gayle and Philip Phillips, who sued Bartlett & Waring for the recovery of it, but were defeated in the suit by reason of the title of the latter, under the lien of their judgment, being the oldest: and Gayle and Phillips thereupon conveyed by deed all their title to the property to complainant, who now holds it."

The bill further states that when the store-house and lot were levied on under the executions of Bartlett & Waring, McRea as surviving partner fully recognised and acquiesced in the right of Bartlett & Waring to subject said property, but that their right to subject the interest of Lang therein to the satisfaction of their judgments was controverted and denied by Mrs. Lang, his administratrix; that she filed a bill in chancery and enjoined Bartlett & Waring from proceeding to sell such interest; that Bartlett & Waring and McRea were made defendants to said bill; that the injunction was dissolved, and the bill dismissed before the sale by the sheriff; that it was after the determination of this last mentioned suit, and for the reason that they retained, as they supposed uncontroverted, the entire property in said store-house and lot, that Bartlett & Waring made the compromise with Mrs. Lang heretofore refered to, and but for this, they would not have relinquished any portion of their demand: and that notwithstanding all these things, John H. Lang, Hiram A. Lang and Angelina Lang, the heirs at law of said Willis Lang, now claim the undivided half of said property, pretending that the legal title thereof has descended to them, and have instituted an action of ejectment in the Circuit Court of Mobile, which is now pending, against B. C. Hodge, the tenant of complainant, for the recovery of said property. The bill charges that the said property has been properly applied and appropriated at its full value to the payment of a just debt, for which it was really subject; that if the said heirs have any title at law as they insist, it is but a naked legal title, without any interest, that it should be held in trust for the use and benefit of complainant,

and that in equity they ought not to be permitted to disturb the title and possession of complainant, without at least first paying the debt which was discharged by the purchase of said property, and without refunding the amount which Bartlett & Waring abandoned to their mother in the compromise, of which they have received the benefit, upon the performance of all which the complainant says he is ready and willing and hereby offers to restore to them the property, &c.

The bill makes the said John H., Hiram A. and Angelina Lang defendants, and prays that they be enjoined from the prosecution of their action of ejectment, from disturbing complainant in his possession of said property, and from ever setting up any claim whatever to it, with general relief, &c.

An injunction was awarded by a Circuit Judge in conformity with the prayer of the bill.

The answers of the defendants to the bill admit most of its allegations, but deny that the debts, due to Bartlett & Waring, and Bates, were debts for which their father, Willis Lang, was ever legally liable, and insist that neither the judgments obtained by Bartlett & Waring against their mother, nor any bill in chancery, that she may have filed, is conclusive on them.

The complainant introduced in evidence on the hearing the several deeds and transcripts of judgments refered to in the bill —also transcripts of two bills in chancery filed by Catharine Lang, administratrix, and proceedings thereon—the first against McRea—the second against McRea, and Bartlett & Waring, the contents of which bills are sufficiently noticed in the opinion of the court.

Allen H. Ryland, a witness, examined at the instance of complainant, testified that Colin C. McRea was the active business man in the firm of McRea & Lang, and usually attended to its business transactions; thinks McRea was in the habit of signing the firm name to its notes and bills, and has no recollection of ever having seen any signed by Lang; "that the debt to Bates was due by the firm of McRea & Lang, and was for money loaned to the witness through McRea's agency; that in 1836, when about leaving Mobile for Virginia, witness called on McRea and asked him if he knew where witness could borrow three thousand dollars, to which he replied he thought he could, and some few days after this conversation McRea noti-

fied witness that the person was in town with the money to loan him, and requested witness to call at his store the next day, which witness did and there met James F. Bates, who counted out the money and received from witness a note made by him and endorsed by McRea & Lang, at twelve months date; that a few days after this, witness left for Virginia, but previous to so doing, left McRea & Lang his agents, and also left assets with McRea & Lang, among which was a note of John Graves, endorsed by Robertson, Beall & Co., for $3,366, due 1|4 July 1836, and which was paid at maturity and the money received by McRea & Lang, and to this day has never been paid over to witness; that witness' instructions to McRea, on leaving, were that when the note of Graves was due, if paid, to apply the proceeds to the payment of witness' note to Bates; that said note to Bates has subsequently been paid by witness, and that the deed of trust executed by McRea to Bates was made to secure the payment of the money borrowed from Bates by witness, and which was not paid by McRea & Lang out of the funds appropriated by witness for that purpose."

The complainants further shewed that at the time of the execution of the mortgage or deed of trust to Bates, McRea executed to Bates two notes for the Ryland debt, in the names of McRea & Lang. The chancellor decreed in favor of the complainant, in accordance with the prayer of his bill, and ordered the injunction to be perpetual, &c.

From this decree the plaintiffs in error appealed and now assign it as error.

HOPKINS and LOCKWOOD, for plaintiffs in error:

A deed made by one partner in the name of the firm, or by a surviving partner, conveying the real estate which belonged to the partnership, will convey the interest only of the partner who made the deed.—Story on Part. 133, 145-6-7-8-9, 176; 1 Brock. Circuit Ct. Rep. 456, 463; Coles v. Coles, 15 Johns. Rep. 159. It is only in a court of equity that real estate owned by partners is treated as personal property.—1 Story's Eq. 624; Story on Part. 127-8; Watson on Part. 53 top, and 73 marg. p. At law, the heir at law of the deceased partner is held to be the owner of the share of the deceased partner against the creditors, the surviving partner, and the personal representatives of the deceased

partner.—1 Story's Eq. 624, § 674; Story on Part. 127-8-9, 146 to 149, 176; Watson on Part. 53 top, 73 marg. page; 3 Kent's Com. 37-8-9, note, 2d edit.; 1 Sumner's Rep. 182; 5 Metcalfe, 562, 582, 586; 10 Leigh's Rep. 406, 423; Heirs of Pugh v. Currie, 5 Ala. Rep. 446-8; 9 Cond. English Chan. 118. The title of Lang to the real estate was vested by his death in his heirs at law, and they could not be divested of it without a judicial proceeding to which they were or might have been parties.—Mansony & Hurtell v. The U. States Bank, 4 Ala. Rep. 752; Fitzpatrick et al. v. B. & W. Edgar, 5 Ala. Rep. 503-4.

2. If the equitable interest in real estate of a sole owner were sold under an execution against him, the purchaser would acquire no right from the purchase either at law or in equity, and a court of equity would not confirm such a sale upon a bill filed for the purpose. Such a sale would be a violation of the statute law which requires an equitable interest in real estate to satisfy debts to be sold only by a decree of a court of equity.—Clay's Dig. 350, § 31. At common law, a sale of an equitable interest in land was void.—Van Ness v. Hyatt et al., 13 Peters, 294, 301. If the equity of McRea against the estate of Lang in the hands of his heirs had been sold under the execution, the sale would have been void for want of authority to make it, and illegal because the statute law prohibited it, (13 Peters, 294-301,) and a court of equity would not confirm the void and illegal sale.—6 Ala. Rep. 16; 2 Peters, 527; 17 Eng. Com. Law Rep. 315; Chitty on Con. 228-30-31-32.

3. The deed made by McRea when he was the surviving partner conveyed his own share only of the estate, and did not transfer the share of the deceased partner, then in the hands of his heirs at law, either at law or in equity.—Coles v. Coles, 15 Johns. Rep. 159; 1 Brock. 463; Story on Part. 133, § 94, and pages from 145 to 149, 176; 5 Metcalf, 580.

*Dyer v. Clark.*

4. The note of 1838, made in the name of McRea, surviving partner, endorsed by Ryland, and described in the mortgage to Bates, created no obligation against the estate of Lang. The endorsement of Ryland's note did not bind Lang. (Mauldin v. Branch Bank at Mobile, 2 Ala. Rep. 502,) and the note made in the name of McRea in discharge of that endorsement could create no obligation against the estate of Lang.—See authority

last cited; 4 Johns. 227; 3 ib. 528. Ryland proves that after the endorsement McRae and Lang received a sum of money for him which has never been paid to him, and which should, according to his instructions to McRea, with whom he left the note on which it was paid for collection, have been paid to Bates in payment of the note held by Bates, and which McRea in the name of his firm endorsed for the accommodation of Ryland. Lang was bound neither by the endorsement nor the receipt of the note for collection, as it is not shown that the collection of notes was within the scope of the business of the firm, nor that Lang knew of the receipt of the note or the money upon it, or that the money collected and misapplied by McRea was used by him for the benefit of the firm. McRea alone received and undertook the collection of the note due to Ryland.—2 Ala. 512. As both the notes embraced by the mortgage were signed by McRea as surviving partner, neither note bound the estate of Lang.---See 4 Johns. 227; 3 ib. 528. As Lang was not bound by the endorsement, he acquired no interest in the collateral security afforded by the note received by McRea for collection. If it appeared that Lang was responsible for the collection of the note, he is not liable upon the endorsement or the note described in the mortgage, and the failure to pay the money according to the instructions of Ryland would make Lang's estate the debtor only of Ryland, and not of Bates, who attempted to sell the estate of Lang under a mortgage made after Lang's death, and for a debt which Lang did not owe to Bates. The debt which Ryland owed to Bates has been paid by Ryland.

STEWART and CAMPBELL, for defendant:

The surviving partner of an insolvent firm conveys the real estate of the firm as a security for a debt which the partnership owed; the property is sold under the mortgage. Can the heirs of the deceased partner disturb the title of a *bona fide* purchaser? This involves an inquiry into the rights of a *surviving partner* in the real estate of the firm. Has he simply a *lien* on the property for the security of his balance, or has he an equitable *estate* in the property commensurate with the partnership rights during the existence of the firm, and with powers adequate to the disposition of the property for a copartnership purpose?

The authorities, for a while conflicting and contradictory,

have finally settled upon the conclusion that real estate pur-chased with partnership funds and used for the business of the firm, is to be regarded as *personal* estate, and that the control of the property belongs to the surviving partner.—Collyer on Part-nership, § 148; Phillips v. Phillips, 1 M. & K. 649. The rents and profits of such property, after the dissolution of an in-solvent partnership, pass to the assignee under the insolvent laws, although the act of insolvency is committed after the dis-solution, and neither the heir or widow of the decedent can dispute his title.—Burnside v. Merrick, 4 Metc. 537; Priest v. Priest, 5 Metc. 582. An administratrix of a deceased partner may relinquish to the survivor real estate on a settlement of the affairs of the firm, and the heirs will be obliged to confirm her disposition.—Broom v. Broom, 3 M. & K. 443; (S. C., 9 Cond. Ch. Rep. 118.) The heirs of a deceased partner will not be allowed to disturb a decree of sale of the property when it ap-pears that the decree was obtained on the application of the survivor to carry into effect a purpose within the scope of the partnership powers, although the decree is erroneous.—Pierce v. Trigg, 10 Leigh, 406. A sale by the surviving partner of partnership property, to pay partnership debts, will be enforced against the heirs of the deceased partner, without an inquiry whether the sale was beneficial.—Delmonico v. Guillaume, 2 Sandford's Ch. R. 366. These late and well considered au-thorities show that the powers of the surviving partner extend to a sale of the property, and that he has an estate, and not simply a lien.

2. The debt for which the sale was made was a debt of the firm. The debt of Ryland to Bates was settled by the *note of McRea, surviving partner*, endorsed by Ryland at one day's date, and a mortgage. This did not extinguish the liability of the firm, (Bates v. Ryland, 6 Ala. 668; Winter v. Innes, 4 Mylne & C. 101)—but on the contrary, was within the scope and powers of the partnership. The surviving partner may liquidate the outstanding accounts of the firm with its property.

3. The defendants, being naked trustees, cannot contradict the act of their *cestui que trust*. They are bound to hold the property according to the will of the *cestui que trust*. The *jus disponendi* of the latter is absolute and uncontrolable. A refu-sal to convey, at the request of the *cestui que trust*, is a breach

of duty and subjects the trustee to costs.—Goodson v. Ellison, 3 Russ. 526; 1 Cox Ch. Ca. 199; 1 Lomax Dig. 222; Lewin on Trust, 498; Willis on Trustees, 85-108; 3 Vesey, 757. See cases above cited.

4. Gayle and Phillips are *bona fide* purchasers at a public sale, for a valuable consideration, and no fraud is imputed either to them or McRea, or Bates, in the transaction. The court will not enquire into the sufficiency of the price between them and the heirs. The administratrix might have called the sale in question for a fraud. The distributees might assail it if in addition to a fraud in the sale there had been a collusive ratification by the administratrix. These facts should have come before the court affirmatively by a cross-bill. They are not even put in issue in this case.

COLLIER, C. J.—At law real property is supposed to belong to the persons in whose name the title appears to stand by a conveyance. If it is in the name of one of several partners, he alone will be deemed the owner; and if the conveyance is to all the partners, they will be regarded as tenants in common. But no matter how the title may stand at law, real estate belonging to the partnership will in equity be treated as belonging to the firm like its personal funds, and disposable and distributable accordingly; and the parties who appear to be owners of the legal title will be held to be trustees of the partnership and accountable as such to the partners, according to their respective rights and interests as *cestuis que trust*, or beneficiaries. So far as the partners and their creditors are concerned, real estate belonging to the partnership is in equity treated as mere personalty; and so it will be deemed as to all other intents, if the partners have by agreement or otherwise purposely impressed upon it that character. But the decisions are contradictory upon the question whether in the absence of such agreement or other act affecting its general character, real estate held as a part of the partnership stock ought to descend as such to the heir or devisee, or belong as personalty to the executor or administrator. Upon this point there has been a diversity of judicial decision.—Story on Partn. § § 92-'3, and note at the end of the latter section; Colly. on Partn. b. 2, ch. 1, § 4.

It is said that although the law considers each partner as pos-

11

sessing a dominion over the entirety of the property, and not merely over his own share, yet in respect to real estate a different rule prevails, founded upon the nature of the property and the provisions of the common law applicable thereto. Each partner is required both at law and in equity to join in every conveyance of such estate, in order to pass the entirety thereof to the grantee; if only one partner executes it, either in his own name or in that of the firm, the deed will not ordinarily convey any more than his own interest therein.—Story on Part. §§ 94-101-'9; Colly. on Part. b. 2, ch. 1, § 4; Coles v. Coles, 15 Johns. Rep. 159; see Sigourney v. Munn, 7 Conn. Rep. 11; Deloney v. Hutchinson, 2 Rand. Rep. 183; Edgar v. Donally, 2 Munf. Rep. 387; Howard v. Priest, 5 Metc. Rep. 582; Burnside v. Merrick, 4 Metc. Rep. 537; Pierce's Adm'r v. Trigg's Heirs, 10 Leigh, 406.

Whether the interest of a deceased partner in real estate descends to his heirs or devisees, or as personalty to his executor or administrator, at law it is perfectly clear that the surviving partner has nothing more than a mere equitable interest, in virtue of which the latter may make it available for the purposes of the partnership and to enable him to settle its affairs. Can such an interest be sold under a *fieri facias* to satisfy a judgment against the survivor for a debt of the partnership?

By the act of 1812, the sheriff was authorised to sell and convey to the purchaser under an execution, all the right, title and interest of the defendant in "real estate, either in law or equity;" but the act of 1820 provides that "no other than the legal title to land or other real estate shall hereafter be sold or conveyed by virtue of any execution." *Also*, that "the equitable title or claim to land or other real estate shall hereafter be liable to the payment of debts, by suit in chancery, and not otherwise; and when a bill shall be filed for that purpose all persons concerned in interest shall be made parties thereto." In *doe exdem*. Davis v. McKinney and McKinney, 5 Ala. Rep. 719, we were inclined to think that under the act of 1812, it would have been no objection to the sale of lands under execution, that the defendant had only an equitable title; but were of opinion that the statute had been modified in this respect by the later act. This we said was "explicit in its terms and does not leave the intention of the legislature to be ascertained by construction. It inhibits the sale of an equitable title under

execution, and refers the creditor to chancery for an authority to sell it. The occupant of land with such a title, we think, cannot be regarded as having a distinct and independent possession which may be levied on, but his possession is so intimately connected with the title, that it cannot be sold under execution, so as to transfer an interest to the purchaser."—See also, Rhea, Conner & Co. v. Hughes, 1 Ala. Rep. 219; *Doe ex dem.* Heydenfeldt v. Mitchell, 6 Ala. Rep. 70; Whiteside et al. v. The Br. Bank at Decatur, 10 Ala. Rep. 249. The question was again considered in Elmore & Willis v. Harris, 13 Ala. Rep. 360, and the law, as we have stated it, re-affirmed. Although the statutes of Mississippi, in respect to the liability of equitable titles to levy and sale under execution, are quite as broad in their terms as our act of 1812, yet it has been held in that State that a purchaser of land, who holds a bond for title when the purchase money is paid, has not such a title as may be sold until payment is completed; and that the purchaser of a perfect equity is merely substituted to the condition of the defendant in execution, and cannot maintain an ejectment, but must come into equity to enforce his right: *Further*, it is made a question whether the purchaser of the interest of the obligee, who has not paid the purchase money under an execution, can be substituted to the place of the judgment creditor, to the extent of his bid, and go into equity to be reimbursed by a decree for a sale?— Thompson v. Wheatley, 5 S. & Marsh. Rep. 499; Goodwin v. Anderson et al., ib. 730. See also citations in Elmore & Willis v. Harris, *supra*, 365. In the case at bar, the sheriff must be intended to have levied on the *legal interest* only of McRea as surviving partner in the property in question; the equity to which he was entitled in virtue of his previous connection with his deceased partner, Lang, we have seen was expressly exempted by statute from sale, and it will not be presumed that the sheriff attempted to do more than his duty. But let it be conceded that the entire partnership interest was professedly levied on and sold, and the complainant does not occupy a more favorable position; for such a proceeding being not only in derogation, but in direct opposition to the act of 1820, would be inoperative upon the legal estate of Lang's representatives. The complainant's title, predicated of such a purchase, would be, *pro tanto*, *absolutely void*, and having nothing to rest on, a

court of equity could not impart to it vitality. Form and order has been given to chaos, but an appeal to equity to breathe life into a non-entity which is both intangible and imperceptible, supposes a higher power—one which no human tribunal can rightfully exercise. *Æquitas sequitur legem.* This view is conclusive against the equitable title which the complainant has attempted to deduce from his purchase at the sale under execution. It being impossible for the sheriff to sell more than the *legal estate* of McRea, the *legal title,* which by the death of Lang was transmitted to his real or personal representatives, cannot be divested for the complainant's benefit; for the reason, as we have seen, that he did not and could not acquire it by his purchase. To this it may be added, that the sheriff's deed only professes to convey to Bartlett & Waring the estate of McRea as surviving partner, &c.

The bills filed by the administratrix of Lang against the surviving partner, McRea, and against the same defendant and Bartlett & Waring, and the decree thereon, do not conclude any matter in controversy upon the title which the complainant attempts to deduce from Gayle and Phillips. The first bill was for a discovery of the partnership effects and an account; the second alleges that the notes of H. C. Dade, on which judgments were recovered against McRea as surviving partner, upon the assumption that McRea & Lang were their endorsers, were endorsed by McRea for Dade's benefit, without the assent or approbation of Lang; that Bartlett & Waring held a mortgage on real estate, for their security, executed by Dade; and upon these facts prayed that the sale of the property now in question might be enjoined, and that the partnership estate might be devoted to the payment of its debts. By the death of McRea the first suit abated; and the bill in the latter was dismissed at the hearing. The mere statement of the character and objects of these suits, and the disposition of them, is sufficient to show the correctness of the conclusion we have expressed as to their effect.

One partner cannot, after the dissolution of the partnership, make, endorse or accept a note or bill in the joint name, even in substitution of a pre-existing debt of the firm; but the original debt will remain a joint charge, unless the partner not signing was intended to be released.—Parker v. Cousins, 2

Grat. Rep. 372; Wilson v. Torbert, 3 Stew. Rep. 296; Edgar v. Cook, 4 Ala. Rep. 588; Fontaine & Freeman v. Lees' Adm'rs, 6 Ala. Rep. 889; Lees' Adm'rs v. Fontaine & Freeman, 10 Ala. Rep. 755; Sneed v. Wiester, 2 A. K. Marsh. Rep. 285.

Where a note is made by one partner during the existence of the partnership, in the joint name, the law will intend in the absence of opposing proof, that it was for the benefit of the firm, and within the scope of their dealings.—Knapp & McBride v. Norman, 7 Ala. Rep. 19. But one partner cannot bind his copartner by signing their names as sureties in a note, nor can he draw, endorse, guaranty or accept in the firm name, a note or bill of exchange for the benefit of a third person; and where it appears that he has thus used the partnership name, it devolves upon the party who seeks to enforce such a security, to show that the transaction was sanctioned by the inactive partner.— Wagnor et al. v. Clay, 1 A. K. Marsh. Rep. 257; Smyth v. Strader et al., 4 How. Rep. (U. S.) 404; Rolston v. Click et al., 1 Stew. Rep. 526; Mauldin v. The Br. Bank at Mobile, 2 Ala. 502; Hibbler & Pearson v. De Forest, Morris & Wilkins, 6 Ala. 92.

The admissions of one partner, after the dissolution of the concern, will not establish a debt against his copartner.—Barringer & Rhodes v. Sneed, 3 Stew. Rep. 201; Thornton v. Kerr & Hope, 6 Ala. Rep. 823; Ward v. Howell, 5 Har. & Johns. Rep. 60; Evans v. Dubbery, 1 A. K. Marsh. Rep. 189; Boyce v. Watson, 3 J. J. Marsh. Rep. 500; Yandes et al. v. Lefavour et al., 2 Blackf. Rep. 240; Willis v. Hill, 2 Dev. & Bat. Rep. 535; Scott, Harper & Co. v. Dansby, 12 Ala. R. 714.

In Hogan & Co. v. Reynolds, 8 Ala. Rep. 59, it was held, that a partnership to buy and sell notes does not authorise one of the partners to receive notes for collection: *Further*, that if a partner converts the money of a third person to his own use, and afterwards appropriates it to the purposes of the firm, the partnership is not liable.

It is shown by the testimony of Ryland, that he was the borrower of three thousand dollars of Bates, through the agency of McRea, for the re-payment of which he made his note at twelve months, endorsed by McRea in the firm name of McRea & Lang; that he left with his endorsers the note of John Graves, for thirty-three hundred and sixty-six dollars, due some months previous to the maturity of the witness' note—instructing Mc-

Rea to apply the proceeds to the payment of the debt to Bates. Graves' note was paid at maturity, but the money was not appropriated as directed by witness, and witness has since paid his note to Bates. This witness' deposition is not expressed in such precise terms as it is obvious he would have stated the facts, if his attention had been more particularly called to them, or the necessity of more precision had occured to him. Although he says his note was endorsed by McRea & Lang, that previous to his departure for Virginia, immediately after he borrowed the money, he left McRea & Lang his agents in his absence, by whom the amount of Graves' note was received and never paid to him; yet when taken in connection with other facts of the deposition, we cannot suppose the witness intended to affirm that Lang assented to, or in any manner interfered in these transactions. He explicitly states that McRea was the active business man of the firm—usually did its business, and believes that he signed the partnership name to notes and bills,—that he does not recollect to have seen any signed by Lang: *Further*, that it was through McRea alone that he effected the loan from Bates. It is clear from these facts, that the witness in saying that the firm endorsed his note, that they received Graves' for collection, and that it was paid to them, stated an inference which he predicated of the connection between McRea & Lang. In respect to the payment of Graves' note, he could not have known it, as he was absent when it matured, and the facts show that McRea endorsed for his benefit, and that his instructions as to the application of the money to. be paid on Graves' note were given to McRea; and as for leaving McRea & Lang his agents, there is nothing to establish the knowledge or assent of Lang to the appointment.

Again: Although the witness states that the mortgage executed by McRea was intended to secure the money borrowed by witness of Bates, and which McRea & Lang failed to pay with funds provided for that purpose, it is certain that his knowledge must have been mere hearsay, derived from the parties to the mortgage. This is merely noted to show the loose and inaccurate manner in which the witness expressed himself—doubtless with the most honest intentions.

The note, then, of Ryland to Bates was endorsed by McRea in the partnership name, for the exclusive benefit of the maker,

and this endorsement not being assented to by Lang, imposed no liability upon him.

The notes which were made by McRea as surviving partner, in the name of McRea & Lang, we have seen, could not bind the estate of his deceased partner—not being an act within the scope of the powers which by the death of Lang devolved upon McRea. And there being no prior indebtedness of the partnership to Bates, the mortgage must be regarded, both in equity and at law, as a security for the individual debt of McRea, the effect of which will be to restrict its operation to his own interest in the property, without in any manner affecting the legal estate of the representatives of Lang. Even conceding that the terms of the mortgage indicate an intention to convey the joint estate, and that it was competent for McRea to mortgage it for the payment of a partnership debt, and still the law will not tolerate a divestiture of the estate of his deceased partner's representatives for the purpose of paying a debt with which he was individually chargeable.

Whether a surviving partner has only a lien in equity, or an equitable estate in the lands of the firm, we need not enquire; for, however this may be, the result on the proofs in the cause must be the same upon either hypothesis.

In Bartlett & Waring v. *Doe ex dem.* Gayle & Phillips, 6 Ala. Rep. 305, the question was whether the lien of the executions of the plaintiffs in error was suspended by the injunction awarded at the instance of Lang's administrator, to restrain the sale of the property now in controversy, so as to give a priority to the mortgage by McRea to Bates, which was executed pending the injunction. The effect of the sale under the executions to convey the joint estate was not controverted; and as the purchasers under the mortgage were suing at law, we should think they could have gained nothing by establishing the exemption of Lang's interest from liability to sale on the executions against his surviving partner; for the mortgage at most could only pass the equity of the mortgagor, and this would be nothing more than an equity upon which the plaintiff in ejectment could not recover. But we need not notice that case further, as it cannot constitute an element in the decision of the present, which asserts the title. *Besides,* it was an action of ejectment, and perhaps for that reason is not conclusive upon the title of

the lessors of the plaintiff, if they have any.—Camp v. Forrest and another, 13 Ala. Rep. 114. We have but to add, that the decree of the Court of Chancery is reversed, and the bill dismissed, at the costs of the defendant in error.

DARGAN, J., not sitting.

NOTE BY REPORTER.—The foregoing opinion was delivered by the late Chief Justice, at January Term 1849, and was held up to await the result of an application thereupon made by the defendant in error, supported by affidavit, to modify the decree so far as to reverse and remand the case, or at least to dismiss the bill without prejudice to the title derived under the deed of trust executed by McRea to Bates.

CAMPBELL & STEWART, for the motion:

The application of the defendant in error for a modification of the decree, is founded upon the *peculiarity* of the case, as exhibited in this court.

*This court construes a parcel of testimony admitted to be material, differently from the chancellor, and in opposition to the meaning of the party who gave it.* The facts testified to all parties agree to have been material.

The claim of Bartlett & Waring under the deed of trust of McRea to Bates, and the deed of Bates to Gayle and Phillips, depends upon the fact that the deed of trust was made to secure a valid debt of the partnership. Admitting that the deed was made to secure a debt of the partnership, we have furnished authority to establish that McRea was authorised to make it. The interest of a surviving partner is not a *lien* on, but an estate in the land, with a capacity of disposition.—2 Sandford's Ch. Rep. 366; 10 Leigh's Rep. 406; 5 Ala. 446; 5 Metc. 582; 1 Mylne & K. 649; 3 ib. 443. We see then, the evidence is material, and that the plaintiff's rights are not properly adjudicated, if the court here, overruling the construction of the chancellor of Ryland's evidence, shall make a final decree upon the cause. To enable the court to preserve this right, we have asked that the court will send back the cause with directions for the re-examination of the witness Bates; if this is refused, to dismiss the bill without prejudice. The first course is prefered because the costs of the litigation will be diminished and justice

be done in this cause.   The question is, is such a course competent?   The justice of it must be apparent.—1 Cox's Ch. R. 437.   The copy of the answer not having been signed by a proper officer, the vice-chancellor dismissed the bill.   On appeal, the lord chancellor reversed the decree—ordered the cause to be set down again, and the error was corrected.—9 Price, 563.   An objection was taken at the hearing, that the answer of the wife, when she answered jointly with her husband, was not evidence against her, when her separate estate was involved.   The objection was held to be insurmountable, and the cause was ordered to stand over to enable them to supply the proof.—8 Price, 613; 1 Russell, 527.   The point was maturely considered, in the case of Cox v. Allingham, 1 Jacob, 337; 4 E. C. Ch. Rep. (2 part) 337.   The court will observe in the argument and authorities employed in that cause, the large discretion which the court exercises when an acknowledged omission has occurred in the proofs of the parties.   The court of chancery must have the power, and cases must continually arise for its employment, to guard suitors from the misconceptions or inadvertence of those who have their interests in charge.   It would be intolerable that consequences injurious to the parties should follow from the slips or inaccuracies of counsel, or other officers of the court.   In this case, we admit that the testimony of Ryland is not as distinct as it might have been.   The fact that this court places one interpretation upon it (contrary to its literal meaning) from that which the chancellor did, or that Ryland himself supposes to be proper, is evidence that his testimony has not been very clearly set down. Suppose the chancellor had taken the view of the matter that that this court did, the powers which were exercised in the several cases we have cited would have been appropriately exercised.   The case in *Jacob* was maturely considered.   The master of the rolls in that cause was averse to the practice. The case was called a strong case.   There was no surprise, the importance of the fact was well known; it was the foundation of the case.   The master of the rolls made a decree which we desire shall constitute the basis of the order in this case. We ask that the court below may be directed to permit the plaintiff to examine the witness Ryland, and such other witness as may be considered proper for examination, on the single point

of the consideration of the deed from McRea to Bates. *We agree that the costs of this examination should be paid by us.* This court might order additional terms, if needful. The editor of the Chancery Reports, which include Jacob, (4 Cond. En. Ch. R.) has added a vast number of cases in which the powers we claim were exercised in addition to those we have cited. These authorities are cited in the note on page 346 of Jacob's Reports in the edition we have mentioned. In addition to those authorities, we cite one contained in the 1 Smede's & . Marshall Ch. R. 44. *Suppose the court should be indisposed* to remand the cause, and place us in a condition to have a title clearly presented and in some manner sustained, what is the proper course then?' Suppose the objection had been made to the introduction of the deed from McRea to Bates, for want of proof of the partnership debt of McRea & Lang, which is mentioned in it? Suppose the chancellor had sustained the objection, what would have been our position? In the case in Jacob, before cited, these questions are answered: "Let us consider what would be the result at law, if the plaintiff coming to trial had omitted to produce a necessary witness: He must unquestionably fail—but how could he fail? It would not be a decision barring his right or barring another action. Then if the same thing happened in equity, what would be the analogy? The court would not dismiss the bill without liberty to file another. The court would not *decide it finally and conclusively,* so that the dismission might be pleaded in bar to a new bill. The plaintiff would pay the costs, but he would be able to proceed again, after having the benefit of knowing the evidence. This certainly ought to weigh with the court, particularly as the same strictness is not observed here as at law."—Jacob, 343.

Daniel, in his work on Chancery Practice, 1200, states the principle on which bills are dismissed without prejudice: "Directions of this sort are inserted when the dismissal is occasioned by any slip or mistake in the pleadings or proofs; thus, formerly, when a bill was dismissed for want of parties, it was expressed to be without prejudice: And so when a bill was dismissed in consequence of *facts not having been properly put in issue,* or of the agreement for the specific performance of which the bill was filed *turning out upon the evidence to be different from that actually proved.*"

The case of Stevens v. Guffy, reported in 3 Russell, 172-185-186, printed in this country, (3 Eng. Cond. Ch. Rep.) furnishes an ample authority for the modification of the decree in the manner we have stated. This court expressly refuses to consider one of the grounds for equitable relief. We have shown a title complete in all its parts, except in evidence of a single fact, to *which* we have given *evidence*, the meaning of which is the subject of contest between the two courts. This court will not then by a final decision exclude us from the power hereafter of litigating this title. This court will not place us in a situation different from that we would have occupied in the event that the decision had been originally against us. We could then have dismissed our bill. We had the subject then under our control. Can this court allow the organization of our courts to make such a breach in the rights of the plaintiff? The errors of the court below in our favor do us injury not only in the costs, but in the very vital frame of our case, if the court adheres to this decree. We then say the case of Stevens v. Guffy, in 3 Russell, 172, is in point, for such a modification. 2 Sch. & Lef. 12. We then insist that inasmuch as we have not shown *laches*, but that our position here arises from the errors not of our own but of the chancellor and examiners—that we have shown that we were aware of the point and have produced evidence to it, we are entitled to a decree similar to that found in *Jacob;* but should this court think differently, we insist that there ought to be no difficulty in modifying the decree so as to place us in a condition of a party non-suited.

Hopkins and Lockwood, contra :

The defendant in his petition asks the court either to remand the cause to the Chancery Court for further proceedings, or to dismiss the bill without prejudice. Near the end of the petition he states his willingness to accept the latter modification of the decree. The court, I presume, will confine its consideration to the claim of the defendant to what it deems a proper measure of justice, and treat the petition as one to modify the decree by the dismissal of the bill without prejudice. The court will find upon an examination of the cases relied upon by the other side, that all the applications except one made in them to re-examine witnesses, were made after publication and before the hearing.—4 Johns. Ch. Rep. 415, and the authorities there cited.

Lang's Heirs v. Waring.

In the excepted case, the witness who was re-examined after the decree had given his deposition before the hearing, but inadvertently omitted to make a release and render himself a competent witness. The order to re-examine him was to enable him not to alter his testimony, but to make the evidence he had previously given admissible by inserting it in another deposition to be made when the witness should be competent.—Sandford's case, 1 Vesey, jun. 398.

This court has decided that it will not dismiss a bill without prejudice to enable a complainant to file another bill and prove the case to be made in it, by a witness who was incompetent in the case dismissed, but who is willing to make himself competent by a release before he makes the deposition intended to authorise a decree upon another bill.—Maury's Adm'r v. Masons' Adm'r, 8 Porter, 336. The dismissal of a bill without prejudice for the purpose of enabling a complainant to make another case, and to prove it by rendering such evidence as he offered on the first bill competent on a second bill, could not be the source of as much mischief as might be the consequence of such a dismissal to enable the complainant to make and prove another case by the altered testimony of the same witness. The principle in the case in 8 Porter is a direct authority against the application, either to remand the case for further proceedings, with the view of re-examining Ryland, the witness, or to dismiss the bill without prejudice, for the purpose of obtaining different testimony from Ryland. As the petition does not ask for a re-hearing, with a view to a final decision of the question here, it is an admission that the testimony of Ryland, as it is, was correctly understood by the court.

In the case of Gray v. Murray, 4 Johns. Ch. Rep. 412-'15, Chancellor Kent said, "There never was a re-examination permitted merely to alter and correct testimony after the cause had been heard, discussed and decided upon the very matters of fact to which that testimony referred." The principle affirmed by Chancellor Kent is established by the case referred to in 8 Porter. In opposition to these two judgments directly upon the point, there are no authorities.—See, also, 2 Swans. Rep. 420; 2 A. K. Marshall's, 235-'6.

There is a substantial difference between the deposition of Ryland, which is a part of the record of this case, and the affi-

davit he made which was filed with the petition. According to the deposition, Ryland, the witness, deposited with McRea & Lang a note in his favor, on one John Graves, for collection, with instructions to apply the proceeds when collected to the payment of the note of the witness to Bates, which had been endorsed by McRea, with the firm name of McRea & Lang: That the note of Graves was paid at maturity, and the proceeds were not applied according to the instructions.—See page 136 of the record. According to the affidavit, the witness Ryland left authority with McRea & Lang to act as his agents—to check for money in bank belonging to him, and he instructed them to draw money of his from the bank and pay the debt to Bates: That they withdrew his money from the bank, but did not pay the note to Bates.—See the affidavit on file. According to his deposition, he paid himself, after its maturity, the note to Bates. See page of the record 136. According to his affidavit, he paid only a part of the note to Bates, (the amount is not stated in the affidavit,) and the deed of trust was made by McRea to secure the balance of the debt to Bates.—See the affidavit. He makes no explanation in his affidavit of the material difference in the respects which have been mentioned between his affidavit and his deposition. According to his deposition, as he paid the debt to Bates, there was nothing due of the debt intended to be secured by the deed, when the sale was made under it. The deed was not intended to secure the money Ryland alleges was collected for him and used by McRea, and he does not pretend he made an arrangement with Bates to have the benefit of the deed of trust, but states he paid his debt to Bates. According to his affidavit, the note intended to be secured by the deed was made by McRea as surviving partner, endorsed by Ryland in payment of the note made by Ryland to Bates; that the note embraced by the deed is but partially paid. Ryland is an interested witness. He as well as Bates was interested in the deed.

The mischiefs, which would be the consequences of departing from the rule upon which such applications are refused, are clearly stated by Chancellor Kent.—4 Johns. Ch. Rep. 414. Upon the facts on which this application is made no court of chancery ought to permit Ryland to be re-examined after publication and before a decree.

For the correctness of the decree of this court, the plaintiffs in error rely upon the written argument of their counsel, which was before the court while they were considering the case. The argument is submitted herewith. The counsel of the plaintiffs in error begs leave to express his wish that the application may be determined during the present term.

PARSONS, J.—On first reading of the affidavit which is filed in support of the petition, I thought it was materially inconsistent with the deposition of the same witness. But after a careful comparison of the deposition and affidavit, we think they are not necessarily inconsistent, except in one point, and that we think admits of such explanation from what is stated as to relieve the motives of the witness from suspicion. The witness states in his deposition that he left assets with McRea and Lang, among which was the note on Graves,—nothing more is said about those assets. It is therefore clear that the witness might then have stated more in relation to them, as he has now done by his affidavit. This, however, may not have been thought by the witness to be necessary, and we think we may fairly presume that he did not. The witness stated enough in regard to the note on Graves, if taken according to his own language throughout, (and the chancellor did so take it,) to induce the party who had his deposition taken to suppose that any explanation about the other assets was immaterial, which relieves the party of the imputation of negligence. But this court, by construction of the entire deposition, arrived at the conclusion that the witness, on one point, did not mean precisely what he said, and it now appears by the affidavit of the witness that this court was right. The witness stated in his deposition that he paid his debt to Bates himself, and now by his affidavit it appears that he paid but part of it. This is the point of inconsistency. But it appears by the affidavit, in substance, that he put funds into the hands of McRea & Lang to pay it all, which were misapplied. Without violence to any authority cited by the counsel for the plaintiffs in error, as we understand them, we may now dismiss the bill without prejudice to the title of the defendant in error, which is secondly stated in their bill, and which he obtained by purchase from Gayle & Phillips, and we dismiss the bill accordingly.

CHILTON, J.—I concur in dismissing this bill without prejudice to the extent above stated by Judge PARSONS, but I arrive at my conclusion from the record. Whether the affidavit submitted can be regarded for any purpose—QUERE?

DARGAN, C. J., not sitting.