## OWENS *vs.* COLLINS & LANGWORTHY.

1.  When money is advanced by one partner out of his individual funds, to be invested with other moneys belonging to the partnership in the purchase of real estate for the joint benefit of all the partners, and the purchase is made by another partner, who takes the legal title in his own name, a trust is created in favor of the individual members of the firm, which a court of equity would enforce.

2.  But the partner thus advancing his money would have the right, at any time before the appropriation was actually made, to change his intention, and direct a different application of it; and the subsequent application of his funds in the manner which he had first authorized, would create a trust, if at all, in his favor alone.

3.  When a bill is filed to enforce a trust growing out of partnership transactions between complainants and defendant, or a joint trust in favor of complainants individually, and the evidence shows a separate trust in favor of one of the complainants only, the discrepancy between the *allegata* and *probata* is fatal.

4.  A trust created by parol, whether express or implied, may also be discharged by parol.

5.  When lands are purchased with partnership funds, and for partnership purposes, equity regards them as partnership property, and it is immaterial in whose name the purchase is made; but when the bill alleges both facts, while the proof shows a purchase by one partner for partnership purposes with his individual funds, the proof does not sustain the case made by the bill.

ERROR to the Chancery Court of Montgomery.

Heard before the Hon. J. W. LESESNE.

The bill was filed by the defendants in error for an account of copartnership dealings, and to enforce a trust in certain lots in the City of Montgomery, which the bill charges were purchased by Owens, and the title taken in his own name. The bill also charges in relation to these lots, that it was agreed between the parties, that the purchase should be made for their joint use and benefit, and for that purpose that certain moneys in the hands of Owens belonging to Collins should be used, Owens having the management of the whole matter; that the purchase of the lots was made by Owens in September, 1844, as the partner of the complainants, with the partnership funds, and for the joint benefit of the partners; that after the purchase he divi-

ded the lots into three parts, one of which was assigned to one Allen, who was interested in the purchase, one set apart for himself, and the other for the complainants; that Owens concealed the fact of the purchase from the complainants, and slandered the title to induce them to abandon the purchase; that he holds the lots as his own, &c.

The answer of Owens denies the agreement that he was to buy the lots for the benefit of the firm, but insists that the agreement was, that if Collins should collect certain moneys, and the titles to the lots were good, then he was to purchase with the money of Collins, retain two-thirds of the lots as his own, and the remaining third to be for the firm; that this was the understanding until August, 1846, when the authority to use the money of Collins for the purchase was revoked by him, which put an end to the agreement; that he made the purchase on his own account, and with his own money, and he also alleges, that in November, 1846, Collins, with a full knowledge of the purchase, demanded the money left in his hands; and that a portion of it was, by his direction, invested in the purchase of a note, Collins at the time disclaiming all interest in the lots, but claiming the money.

The evidence upon the points in controversy, is sufficiently referred to in the opinion of the court. The decree directed an account of the partnership concerns, and also decreed the title of one-third of the lots purchased to the complainants, and the delivery of the possession accordingly.

The decree of the Chancellor is here assigned for error.

ELMORE & YANCEY, for plaintiff in error:

1. There is a resulting trust in the lands, only when the purchase is made with another's money, furnished at the time for the purpose, under some agreement to that effect between the parties.—2 Story's Eq. § 1201; Wallace v. Duffield, 2 Serg. & R. 529; Kisler v. Kisler, 2 Watts 323; Graves v. Dargan, 6 Dana 331.

2. A subsequent tender or reimbursement would be evidence of some contract, but creates no trust.—Botsford v. Burr, 2 Johns. Ch. 405; Foster v. Trustees &c, 3 Ala. 302; and cases *supra*.

3. Declarations which are unequivocal, that one purchased

for another, unless there was an agreement or advance of money for that purpose, do not create a trust.—Taliaferro v. Taliaferro, 6 Ala. 404; and cases *supra*.

4. Trusts must be certain and definite. Although a trust of some kind is clearly created, yet, if its terms are so vague that the character, subject and objects of the trust cannot also be clearly ascertained, it must fail.—2 Story's Eq. § 979 *et seq*.

5. A declaration of trust purports to be, and is in form and substance, a complete transaction, and requires nothing more to be done. There must be an intention to create a trust, and the act or declaration to carry out that intention must not only be completed, but must create the trust.—McFadden v. Jenkins, 1 Keen (15 En. Ch. R.) 558; Welwyn v. Coutts, 3 Sim. (5 En. Ch.) 14; Beatson v. Beatson, 12 Sim. 291; Coleman v. Sarel, 1 Vesey 50; Ellison v. Ellison, 6 *ib*. 656; Antrobus v. Smith, 12 *ib*. 46; Pulvertoft v. Pulvertoft, 18 *ib*. 149; Edwards v. Jones, 1 M. & Cr. 226; Dillon v. Coppin, 4 *ib*. 647; Cunningham v. Plunkett, 2 Y. & C. 245.

6. If the declaration or trust is incomplete, a meritorious consideration is not sufficient to enforce it.—Meek v. Kettlewell, 1 Hare 474; Holloway v. Headington, 8 Sim. 324; James v. Bidder, 4 Beav. 600; Jeffreys v. Jeffreys, Cr. & Ph. 138; Caldwell v. Williams, 1 Bailey's Eq. 175; 5 Watts 389; Minturn v. Seymour, 4 Johns. Ch. 497; Agee v. Steel, 8 Ala. 948; Taliaferro v. Taliaferro, 6 *ib*. 404; Forward v. Armistead, 12 *ib*. 124; 2 Story's Eq. § § 706, 793, 973.

7. The intention may be proved by the act or declaration itself, if it be completed, but if necessary to inquire into its origin, then there must be a valuable consideration to support it.—See cases cited on third point, *supra*, particularly McFadden v. Jenkins, 1 Keen 558.

8. The intention may be proved by the act itself, or by parol declarations, or by circumstances; but it may also be rebutted in a like manner, even though the act or declaration on its face creates a trust.—Botsford v. Burr, 2 Johns. Ch. 405; Steen v. Steen, 5 *ib*. 1; Squire v. Campbell, 1 Myl. & Cr. 489; Phillips v. Craymond, 2 Wash. C. C. 441; White v. Carpenter, 2 Paige 217; Page v. Page, 8 N. Hamp. 187; Foster v. Trustees &c., 3 Ala. 302; Bishop's Heirs v. Bishop's Adm'r, 13 Ala. 475.

9. When the party does not intend to give or part with the dominion of the property, he may retain it, although he may have executed a deed and declared the trusts, when it is voluntary.—Walwyn v. Coutts, 3 Sim. 14; Kennedy v Kennedy, 2 Ala.; Hughes v. Stubbs, 1 Hare 476; Gaskell v. Gaskell, 2 Y. & J. 502, cited in Law Library for July, 1849.

10. For specific performance, the contract must be proved and performed by the complainant; and to take it out of the statute of frauds, when it is parol, he must have paid all the purchase money, and been let into possession under the contract. —Goucher v. Martin, 9 Watts 106; Haslet v. Haslet, 6 Watts 464.

11. To obtain performance, there must be an agreement for a specific price, and for a specific piece of land or interest therein, and the terms of the contract must be certain.—2 Story's Equity § § 742, 751, 757, 761, 762, 764, 769, 770, 771, 793 a; Batten on Specific Performance 60, 108; 5 Beav. 433; Thompson v. Thompson, 1 Coll. 380; Sparling v. Parker, 16 Law J. N. S. Eq. 13.

12. When the answer denies the existence of the parol contract, and insists on the statute of frauds, the bar is complete. 2. Story's Eq. § 758, and cases cited in note.

13. A trust or interest in lands may be waived or discharged by parol. The statute interposes no bar to this.—Botsford v. Burr, 2 Johns. Ch. 406; Price v. Dyer, 17 Vesey, 356; Phillips v. Craymond, 2 Wash. C. C. 445; 2 Story's Equity § § 1202, 1262, 1263.

14. A party having a resulting trust in lands, has the right to elect which he will take, the money or the lands, and having once elected he is bound by it. — 2 Story's Equity § § 1262, 1263.

15. If relief is denied to one complainant, the bill must be dismissed as to all.—Hardeman v. Sims, 3 Ala. 747; Wilkins v. Judge, 14 Ala. 135.

T. WILLIAMS, contra :

1. The principle of trust and trustees should be applied to the parties in this case, upon the equitable principle that where one takes a conveyance in his own name, which he undertakes to obtain for another, equity will consider him as holding it in

trust for his principal.—2 Story's Equity § 1211, and authorities there referred to. This principle is illustrated by a great variety of cases in the books, many of which will be found collected in Kennedy v. Kennedy, 2 Ala. R. 588. If these three partners had placed money in the hands of another person, to be applied by him in making this purchase for them, and he should make the purchase, taking the title in his own name, and afterwards refuse to convey, would not a court of equity compel him? and if a partner is thus entrusted, and thus promises, does he occupy a better position?

2. Where real estate is purchased for partnership purposes, and on partnership account, it is wholly immaterial, in the view of a court of equity, in whose name or names the purchase is made: whether in the name of one partner, or of all the partners, or of a stranger jointly with one partner, it is equally deemed partnership property.—2 Story's Equity § 1207, and cases there cited; Hoxie v. Carr, 1 Sum. 182 to 186; Foster v. Hale, 3 Vesey 696; 5 Vesey 308. In the case at bar, the answers and proof show very clearly that the partners considered the purchase of these lots as necessary to the success of the partnership; that Owens, one of the partners, was to make the purchase; that he had in his own hands all the funds of the partnership, and also those of Collins, with which to purchase. A trust, therefore, results, by operation of law, for the benefit of the partnership. The rule is the same in the case of joint purchasers.—2 Vesey & B. 388; 3 Pr. Williams 158; 2 Story's Equity § 1206; Lee v. Nuttall, 1 Russ. & Myl. 53.

GOLDTHWAITE, J.—The case made by the bill is, that the complainants, Collins and Langworthy, and the defendant, Owens, being in co-partnership in the keeping of a livery stable, made an agreement to purchase certain lots adjoining the one occupied by them in carrying on their business, for the joint benefit of all the partners; that certain moneys in the hands of Owens, belonging to Collins, amounting to about four hundred dollars, were by his direction appropriated to the purchase, and that the balance of the purchase money was paid by Owens out of the co-partnership funds, and the titles taken by him in his own name.

Regarding the directions of Collins, in relation to the appro-

priation of his separate funds, as an advance *pro tanto* to the firm, it is perfectly clear that the investment of these funds, with other moneys realized by the firm from the co-partnership business, under the agreement as charged, would create a trust in favor of the individual members of the firm, which would be enforced in a court of equity, in which court the person holding the legal title would be held as the mere trustee, and the partners as the *cestuis que trust.*—Hoxie v. Carr, 1 Sum. Rep. 103 ; 2 Story's Eq. § 1207.

The purchase of the lots is admitted ; and while we regard the evidence as sufficient to establish the fact that the money belonging to Collins in the hands of Owens was used by the latter in part payment of the consideration, we think it equally clear from the evidence that the balance of the purchase money was paid by Owens from his individual funds.

We also regard it as a clear proposition, that if Collins merely authorized Owens to use his money in the purchase of the lots, for the benefit of the firm, he had the right at any time before the appropriation was actually made to change his intention, and make a different application of the funds. The money remained his until the investment was made, and until then it would be under his control.—Williams v. Everett, 14 East 582; Scott v. Procter, 3 Merivale 652. This being the law, it follows necessarily, that if the funds of Collins were before their appropriation, by his direction, withdrawn from the purpose for which he had originally intended them, the subsequent use of these funds by Owens, if it created any trust at all, raised one in favor of Collins alone.

In the last argument of this case, it was insisted that there was no evidence that Collins had withdrawn his funds in the hands of Owens, from the use for which he had at one time designed them, that is, as an advance to the firm for the purpose of purchasing the lots in question. We have again carefully examined the testimony upon this point, and are confirmed in the correctness of the conclusion expressed in our first opinion.— It is to be remembered, that the funds to be used in the purchase were the proceeds of a draft or order given by Collins to one Coster, for money which was coming to the former, amounting to about four hundred dollars ; and it is not pretended that Owens at any time had in his hands of the individual moneys of

Collins any other than the proceeds of this draft. On the 9th of August, 1846, and before the purchase, which was made in September of the same year, Collins writes to Owens, and after detailing with some degree of particularity the various and unsuccessful efforts he had made to raise funds from different sources, he makes a different appropriation of a. portion of his funds in the hands of Owens, and directs him "to hold on to the remainder of the draft, in case any thing should happen, that it may be come at at any time," assigning as a reason for these directions, "that they had been in a strain so long as to make them feel unpleasant;" and again, in the conclusion of his letter, he refers to this draft in connexion with Mr. Coster. What draft did he refer to? We hear of but one, and with that one Coster was connected. There can be but one construction placed on the letter to which we have referred. The draft which is there spoken of, was the same that was to have been appropriated to the purchase of the lots; this purpose was abandoned by Collins in consequence of unexpected disappointment: not obtaining the money from Powers, and failing to effect a loan from Steele, to both of which circumstances he refers in his letter. Regarding this evidence as conclusive of the change of direction, or the withdrawal of the funds of Collins, in the hands of Owens for the purchase, it is clear that, after these directions were received, these funds could not be considered either as an advance to the co-partnership, or as held for the joint benefit of the complainants; and if, under these circumstances, any trust was raised by the bare use of this mon. ey by Owens, it could result in favor of the person to whom the money belonged, and to him alone. It is entirely immaterial in this aspect, whether we regard the bill as filed to enforce a trust growing out of the co-partnership relations between the parties, or to enforce a joint trust in favor of the complainants. If it can enure to the benefit of Collins alone, and is outside of, or disconnected with the co-partnership, it is not the case made by the bill; and the rule is well settled, that the case proved must be substantially the same as that which is stated upon the record.—Dan. Ch. Pr. 1000; Wilkins v. Judge, 14 Ala. 135.

There is another ground also, which is equally decisive of the case, at least so far as Collins is concerned. Regarding the evidence as sufficient to show that the funds of Collins were not

advanced to the firm, and conceding for the purposes of argument, what we think may well be questioned, that a trust resulted in his favor from the bare use of the money, the law is clear, that a trust of that description may be waived or discharged by parol; and, indeed, the rule applies to all trusts, express or implied, which are created by parol.—Walker v. Walker, 2 Atk. 98; Bottsford v. Burr, 2 Johns. Ch. R. 445; Phillips v. Crammond, 2 Wash. C. C. R. 445. The testimony shows, that after the money in the hands of Owens, belonging to Collins, had been withdrawn by the latter from the purchase of the lots, a portion of these funds were loaned to a third person, apparently with the consent of Collins; and in the latter part of October or the first of November, 1846, he tells the witness, Brooks, that he did not wish to make an investment in these lots, referring, as witness states positively and unequivocally, to the lots in question; and that Owens at the same time, by the direction of Collins, invested a portion of his money in the purchase of a note, Collins remarking that he preferred buying such paper to investing in the lots. This occurred in the City of Montgomery, where the lots were located, and after the purchase had been made, and amounted in law to a waiver or discharge of the trust.

In considering the case thus far, we have treated the equity of the complainants as based upon a trust, resulting from the use of the money of Collins by the defendant, Owens, without reference to any agreement between the parties. That there was some understanding between them at the time of the sale, we do not doubt. This is established by the letter of Owens, written by him on the 9th September, 1846, after the instructions of Collins, and by the reservation of one third of the lots for the complainants; but the difficulty on this branch of the case is, that the evidence leads the mind to no certain or definite conclusion as to the terms or character of this understanding. That Collins did not intend that his funds received by Owens from Coster should be invested on his account, is fully and clearly shown by his letter before referred to, written apparently upon the fullest consideration; and the complainants have entirely failed to establish the charge, that the balance of the purchase money was paid out of the co-partnership funds, or that any new agreement was made of the character as charged. This being the

case, if we consider Owens as the agent of the firm, and buying for the benefit of the co-partnership, we still do not see how the decree can be sustained. Apart from any influence which the statute of frauds might exercise, it is conceded that, where a purchase of lands has been made out of the joint funds of the co-partnership, and for co-partnership purposes, it is wholly immaterial, in the view of a court of equity, in whose name the purchase is made ; it is there regarded as the property of the firm.—Hoxie v. Carr, *supra*.

But the charge of the bill is, in effect, that the lots were purchased with the co-partnership funds, that is, with the money of Collins advanced to the firm, and the proceeds of the business of the co-partnership, and the evidence does not sustain this allegation, as it shows a state of facts inconsistent with the idea of an advance by Collins to the firm; in other words, although the testimony may show clearly, that the purchase was made on account of the firm, it does not establish the fact that it was with the money of the co-partnership. There is, it is true, one witness who details a conversation of Owens, in which he said that the complainants had left money in his hands to buy the lot. This conversation was had before the sale, but at what time does not appear ; so that it may have been before the funds were diverted from the purpose for which they had previously been intended by Collins, and may be reconciled with the directions given by him in his letter of the 9th August.

If the purchase was not made with the co-partnership funds, or with the money of Collins under the agreement as charged, the case is varied from the one which is made by the bill, and a new case made, which involves, so far as the action of the Chancellor is concerned in giving relief, principles very different from those which would govern him upon the case which the bill presents. If a bill was filed against an agent, alleging that he had purchased lands with the money of his principal, upon an agreement to that effect, for the purpose of enforcing the trust in favor of the latter, would it be doubted that, in case it was shown by the evidence, that the agent had paid his own money, relief must be denied for the want of correspondence between the *allegata* and *probata*. The same principles apply in their full force in the present case. Owens may have made the purchase as the agent of the firm ; but if it was made with the in-

dividual funds of Collins, not advanced to the firm, and the money of Owens, and Collins has waived the trust so far as he was concerned, the other complainant is not entitled to relief in this suit, for the want of harmony between the allegations and the proof.

It follows that the decree of the Chancellor, vesting the title to a portion of the lots in the complainants, and directing possession of such portion of them to be delivered to them, was erroneous; that the bill as to these lots must be dismissed, and retained to take an account of the co-partnership. The conduct, however, of the plaintiff in error has not been such as to entitle him to costs in this court, which must be paid, one half by him, and the other half by Collins; and the case must be remanded to be proceeded with upon the matters of account referred.