# Hatchett v. Blanton.

*Bill in Equity by Secured Creditor, for Reformation and En-
forcement of Assignment.*

1. *Election by creditor, to take under or against assignment.*—A creditor,
secured by an assignment of property voluntarily executed by the debt-
or, may elect whether he will accept its provisions, or will assert his
rights independent of it; but he must accept or reject it as an entirety,
and can not accept it in part and repudiate it in part—he can not claim
both under and against it.

2. *Same.*—A general recital in the assignment, that it is the purpose
and intention of the grantor to appropriate the property assigned to the
payment of partnership and individual debts as a court of equity would
marshal the assets, does not authorize the court, at the instance of a se-
cured creditor, to change or subvert the uses expressly declared, and to
appropriate property to the payment of partnership debts, on the ground
that it is in fact partnership property, when the deed treats it as individ-
ual property, and directs its appropriation first to the payment of indi-
vidual debts. .

3. *Real property belonging to partnership.*—Real estate, purchased
with partnership funds, or on partnership credit, and for partnership
purposes, is, in a court of equity, regarded as partnership property, and
subject primarily to the payment of partnership debts, whether the legal
title is in the name of the partnership, in the name of one partner only,
or in the names of the several partners as tenants in common; but, to
have this effect, the property must be purchased with partnership funds,
or on partnership credit, and for partnership uses; and where these two
facts do not concur, the title and ownership are unchanged.

4. *Change in partnership.*—The introduction of a new member into an
existing partnership works its dissolution, and the creation of a new
partnership; and the new partner, in the absence of an express agree-
ment, is neither liable for the debts of the old partnership, nor does he
acquire any interest in its property.

5. *Cross-bill.*—A cross-bill can not be maintained when it is inconsis-
tent with the answer, nor can it be supported on facts not averred in the
answer; and this principle applies where there is an agreement of record
that the defendants shall each be entitled, under his answer, to the same
relief as under a cross-bill regularly filed.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed, on the 13th December,
1875, by Mrs. Mary B. Blanton, as a creditor of the late part-
nership of Phillips & Fariss, and its successor in business,
Phillips, Fariss & Co., each of which firms conducted a mer-
cantile business in the city of Montgomery; against Cyrus
Phillips and Robert C. Fariss, the surviving partners of the
latter firm, said Phillips being also the sole surviving partner

[Hatchett v. Blanton.]

of the former; and against the children and heirs at law of William B. Fariss, deceased, who was a partner of each of said firms; and against George W. Stone and F. H. Warren, as trustees in an assignment, or deed of trust, executed by said Phillips and R. C. Fariss for the benefit of their creditors and the creditors of said partnerships; and against F. Bugbee, and others, creditors secured by said deed of assignment. A copy of the assignment was made an exhibit to the bill; and the prayer of the bill was, "that the said deed may be reformed, so that it may give effect to the intention of the parties thereto, according to equity and good conscience, and the recitals to that effect therein contained; that complainant shall be decreed on final hearing, to have a lien on the property of said Phillips and Fariss; that an account may be taken of the effects of the said partnership in the hands of said trustees, and for other and further relief," under the general prayer.

The deed of trust, or assignment, as shown by the copy made an exhibit to the bill, contained these recitals: "*Whereas,* the late firm of Phillips & Fariss, which was composed of Cyrus Phillips and W. B. Fariss, the latter now deceased, is indebted to F. Bugbee in the sum of $6,000, by promissory note made by said Cyrus Phillips and W. B. Fariss on the 14th March, 1862, and payable on 1st April, 1862: *And whereas* the late firm of Phillips, Fariss & Co., which was composed of said C. Phillips, W. B. Fariss, and Robert C. Fariss, is indebted to the following persons, in the following sums respectively"— namely, to Mrs. Mary B. Craik (now Blanton, the complainant in the bill), in the sum of $2,492, as evidenced by the promissory note of said firm, dated April 23d, 1862, and in two other notes dated in April and May, 1862, respectively, and together aggregating about $1,500; and to Mrs. E. C. Clements, since deceased, by a promissory note for $216, signed by said partnership, and dated September 15th, 1858: "*And whereas* the said Cyrus Phillips is indebted individually to the following persons"—namely, to F. Bugbee, in the sum of $6,000, as shown by his promissory note dated April 1st, 1868; to Henry C. Talbird, in the sum of $2,200, due by promissory note dated 31st October, 1861; and to Mary C. Talbird, by balance due on promissory note dated 1st January, 1864, being about $2,000: "*And whereas* the said Cyrus Phillips and Robert C. Fariss are each indebted to John W. McQueen, for their respective proportion of the losses sustained by the late partnerships of Fariss & Phillips, and Fariss, Phillips & McQueen"—each of which was composed of said C. Phillips, R. C. Fariss, and Jno. W. McQueen, their respective interests being stated—"the amount of said losses being not yet ascertained, but it is agreed that, for the purposes of this instrument, the share of said

Phillips in the losses of said two partnerships shall not exceed
$7,500 : *And whereas* the said partnership of Phillips & Far-
iss owns certain real estate, hereinafter described, in which
said Cyrus Phillips owns an undivided one-half interest; and
the said Phillips, Fariss & Co. owns certain other real estate,
hereinafter described, in which said C. Phillips owns an undi-
vided interest equal to forty per cent. thereof, and said R. C.
Fariss owns an undivided interest equal to twenty per cent.
thereof; and the said C. Phillips owns in his individual right
either the entire or an undivided interest in certain other real
estate, as hereinafter described : *And whereas* the said Cyrus
Phillips desires that his said interest in said real estate shall be
applied and appropriated to the security and payment of the
above stated indebtedness, in the manner, and upon the same
principles, as a court of equity would marshal and appropriate
the same; and so also does the said Robert C. Fariss."

The deed then proceeds: "Now be it known, that I, Cyrus
Phillips, for and in consideration of the premises, and for the
purpose of securing the aforesaid indebtedness, do hereby
grant," &c., " to said George W. Stone and Fred. H. Warren,
an undivided one-half interest in and to a certain tract of land
in Bullock county," particularly described, called the "Baldwin
place," and said to contain 458 acres, "which was conveyed by
M. A. Baldwin to Cyrus Phillips and W. B. Fariss by deed
dated May 13th, 1863, which said tract of land is the partner-
ship property of said firm of Phillips & Fariss; also, an un-
divided two-fifths interest in and to a certain other tract of land
in Bullock county," particularly described, and said to contain
495 acres, "which said tract of land is the partnership property
of said firm of Phillips, Fariss & Co.; also, certain lots in the
city of Montgomery," particularly described, and together con-
stituting the residence of said Phillips; "also, an undivided
half interest in and two the following parcels of land situated
in the city of Montgomery," being lot No. 10 on the north
side of Market street, on which were erected two brick stores
known as No. 37 and No. 39, and the lots in the rear fronting
on Monroe street, with right of way, &c.; "also, an undivided
one-fourth interest in and to the lot of land in the city of Mont-
gomery, with the store thereon situated, at the north-east inter-
section of Lawrence and Market streets, and owned by said C.
Phillips, Lewis Owen, the estate of W. B. Fariss, and the es-
tate of James Fountain; which said lots known as the residence
of the said C. Phillips, and said undivided interest in said other
real estate last mentioned, are owned by said C. Phillips in his
individual right, being all the real estate hereinbefore described
and not stated as belonging to either of said firms, Phillips &
Fariss, and Phillips, Fariss & Co." R. C. Fariss then con-

veyed to the trustees, for the purpose of securing his proportion of the indebtedness of Phillips, Fariss & Co., and his proportion of the losses of said two firms, Fariss & Phillips, and Fariss, Phillips & Co., "an undivided one-fifth interest in and to said tract of land" contained 495 acres, "as the property of said firm of Phillips, Fariss & Co."

The deed contained a provision, that it should be void as to each of the grantors, if he paid his proportion of the secured debts, as specified, on or before the 1st April, 1874; and on their failure to do so, the trustees were authorized to sell the property conveyed, and were directed to appropriate the proceeds of sales, after paying all the expenses of the trust, as follows: "The proceeds realized by the sale of the interest of the said Cyrus Phillips, in the said real estate described and stated as the property of the said firm of Phillips & Fariss, to be appropriated first to the payment of the said Cyrus Phillips' portion of the said indebtedness due by said Phillips & Fariss, with the interest thereon; the proceeds realized by the sale of the interest of the said Phillips in the said real estate described and stated as the property of the said firm of Phillips, Fariss & Co., to be appropriated first to the payment of the said Phillips' portion of the said indebtedness due by said Phillips, Fariss & Co., with the interest thereon; and the proceeds realized by the sale of the said real estate described and stated as owned by the said Cyrus Phillips in his individual right, whether the same be an entire or an undivided interest, to be appropriated first to the payment, *pro rata*, of the said indebtedness due by said Cyrus Phillips individually, with the interest thereon, including his share and proportion of the said losses of Fariss & Phillips, and Fariss, Phillips & Co., but not to exceed $7,500 as of this date; and should any surplus remain, after paying the indebtedness of either of said classes to which said proceeds are herein required to be first appropriated, then such surplus to be appropriated, *pro rata*, to the payment of the said indebtedness of both or either of said other two classes which may be unpaid, so that all the unpaid indebtedness of the said Cyrus Phillips shall share *pro rata* in said surplus." A provision was then inserted directing the trustees, on making a sale, to appropriate his one-fifth interest in said real estate, first, to the payment of his portion of the indebtedness of Phillips, Fariss & Co., and the surplus, if any, to the payment of his portion of the losses incurred by Fariss & Phillips, and by Fariss, Phillips & McQueen; and this provision was then added: "It is understood and admitted, that the said Cyrus Phillips' portion of the indebtedness of Phillips & Fariss is one-half, and of said Phillips, Fariss & Co. is two-fifths; and that said R. C. Fariss' por-

tion of the indebtedness of said Phillips, Fariss & Co. is one-fifth."

The complainant claimed and alleged, that all the said real estate in the city of Montgomery, except the lots which constituted the residence of said Phillips, " was. held, owned and possessed by said Phillips & Fariss as partnership property;" that the partnership of Phillips, Fariss & Co., "which was formed by the addition of Robert C. Fariss to the firm of Phillips & Fariss, became the successors of said Phillips & Fariss, and held, owned and possessed said real estate as their partnership property," and also acquired the said tract of land in Bullock county containing 495 acres, which they " held, owned and possessed as partnership property ; " that the complainant and Mrs. E. C. Clements are creditors of the said firm of Phillips, Fariss & Co., as shown by the several notes held by them, " which are due and unpaid, and are subsisting liabilities and valid charges against the said partnership property of said firms, Phillips & Fariss, and Phillips, Fariss & Co.;" that F. Bugbee is also a creditor of said two firms, to the extent of $6,000, with interest from April 1st, 1862; that the said city lots on which brick stores were erected, described in the deed as the individual property of Phillips, "in truth and in fact belonged to the partnership of Phillips & Fariss, and in equity and good conscience ought to be applied in the first instance to the payment of the liabilities of said firm, and the equities arising therefrom ; " that all the debts of Phillips & Fariss have been paid, except the debt due to Bugbee, and the assets of that firm, including the real estate, are largely more than sufficient to pay his debts, leaving a balance which ought to.be appropriated to the payment of complainant and Mrs. Clements, as creditors of Phillips, Fariss & Co.; "that the formation of the partnership of Phillips, Fariss & Co. was a partnership enterprise of said Phillips & Fariss, and it took possession of and held the said property above described [the city lots and stores], not as the property of the individuals composing the firm of Phillips & Fariss, but in truth and in fact as the property of said firm of Phillips & Fariss; that by reason of said possession so taken by said Phillips, Fariss & Co., said Phillips & Fariss (?) acquired a lien on the property of said Phillips & Fariss above described ; and complainant is advised, and so charges, that said lien subsists, and remains a valid charge against said real estate, in favor of the creditors of said Phillips, Fariss & Co.—namely, your oratrix and Mrs. E. C. Clements." On these allegations, the bill prayed the relief above stated.

W. B. Fariss died in 1867, and R. C. Fariss and F. Bugbee were duly appointed and qualified as the executors of his last will and testament; but they were not made defendants as ex-

[Hatchett v. Blanton.]

ecutors, though each of them was made a defendant individually. R. C. Fariss made no defense, and a decree *pro confesso* was regularly entered against him. An answer was filed by F. Bugbee, as follows: "Respondent admits all the allegations of said bill, except only so much thereof as asserts the right of complainant and E. C. Clements, as creditors of Phillips, Fariss & Co., to share in the assets of the firm of Phillips & Fariss, or that the assets of said firm of Phillips & Fariss are of value more than sufficient to pay the partnership debts : these allegations are denied. Respondent admits, also, and avers that he is a creditor of Phillips & Fariss, and also of Cyrus Phillips, as alleged in the bill; and that the debts due him by said firm, and by said Phillips, are wholly unpaid."

An answer was filed by Cyrus Phillips, denying that there was any mistake in the deed of trust, and asserting that the property was intended to be appropriated as particularly stipulated in the deed. He alleged that the several conveyances for the city property, which the bill sought to subject to the debts of Phillips, Fariss & Co., were taken in the names of himself and said W. B. Fariss individually, and the property was held by them as tenants in common; that after the dissolution of their partnership, and the death of said W. B. Fariss, he and the heirs of said Fariss held said lands as tenants in common, subject only to the debt of said F. Bugbee, the only creditor of said partnership ; and that he had, by the deed, devoted his undivided half interest to the payment of Bugbee's said debt, in recognition of his right. He denied that Phillips, Fariss & Co. "ever had any interest in any of said property, or ever held possession of the same, except it may that they were tenants or agents of Phillips & Fariss; and respondent denies that any lien exists on any of said property, which can be made available to the creditors of Phillips, Fariss & Co." He asked that his answer might be taken as a cross-bill, and prayed "that an account be taken to ascertain the debts outstanding against the respective firms of Phillips & Fariss, and of Phillips, Fariss & Co., and against said Phillips individually ; and of the property respectively belonging to and chargeable with the debts of said firms, and that belonging to and chargeable with the debts of said Phillips individually; that said property be sold, and the proceeds of sale appropriated in accordance with the principles of equity; or for such other and further relief as may seem meet."

An answer was filed by Stone and Warren, the trustees, alleging the facts, on information and belief, as stated in the deed of assignment, and denying the allegations of the bill so far as inconsistent with the statements of the deed; alleging that, in consequence of the conflicting claims which had arisen, they

were unable to administer the trust without the aid and instruc-
tions of the court; and praying that their answer might be
taken as a cross-bill—that the court would take jurisdiction of
the trust, adjudicate and settle the respective claims and rights
of the parties, order a sale of the property conveyed by the
deed, and direct the appropriation of the proceeds of sale. A
guardian *ad litem* was appointed for the infant heirs of W. B.
Fariss, and he filed a formal answer for them. An answer was
filed by McQueen's administrator, denying the allegations of
the bill so far as they were inconsistent with the recitals of the
deed, and stating the facts as they were recited in the deed;
and he filed an answer to the cross-bill of Phillips, admitting
its allegations. He admitted, also, that Bugbee was a creditor
of Phillips & Fariss, but denied that he was a creditor of Phil-
lips, Fariss & Co.

The cross-bills were not brought to issue; but an agreement
of record was entered into, signed by the solicitors of all the
adult parties, as follows: " *Whereas* Cyrus Phillips has filed an
answer and cross-bill in this cause, and F. H. Warren and Geo.
W. Stone, trustees, have also filed an answer and cross-bill; and
*whereas* the original cause is now at issue as to all the defend-
ants, but neither of the cross-causes is now at issue: Now,
therefore, to expedite the hearing, and save further costs, it is
agreed that the defendants, Cyrus Phillips, F. H. Warren and
George W. Stone, trustees, F. Bugbee, M. C. Talbird, and H.
C. Talbird, and George W. Nixon as administrator of John W.
McQueen, shall each and severally have and be entitled to the
same relief, upon their several and respective answers, as upon
cross-bills filed by them severally, setting up their respective
interests as shown by the original bill and their respective an-
swers thereto; and that the answer of each of said defendants
shall be regarded and held, as against the complainant, and as
against each of the above named defendants, as a cross-bill, upon
which the defendant making such answer shall be entitled to
the same measure of relief as upon a crosss-bill regularly filed
and at issue by a general denial of all matters not admitted in
the pleadings."

The cause was submitted for decree, "upon the pleadings
and testimony, and decree *pro confesso* against R. C. Fariss."
The defendants offered no testimony; and the only testimony
offered by the complainant was the deed of assignment, the
deposition of Cyrus Phillips, and an affidavit thereto appended,
by consent, as a part of his deposition. In his said deposition,
Phillips thus stated the facts connected with the several part-
nerships, the several parcels of land, and the claims of the several
parties: "The partnership of Phillips & Fariss was formed in
1847, or about that time, and continued until the death of said

[Hatchett v. Blanton.]

Fariss in 1867. At his death, said firm owned stores on Market street in Montgomery, Nos. 37 and 39, one-half of store on corner of Market and Lawrence streets, a small brick house in rear of said Nos. 37 and 39, fronting on Monroe street, and a tract of land in Bullock county known as the *Baldwin* place, containing 458 acres. F. Bugbee was the only creditor, his debt being $6,000, evidenced by note dated April 1st, 1862. We were equal partners throughout from the commencement of the partnership, and each owned a half interest in the property. The partnership of Phillips, Fariss & Co. was formed in 1856; composed of C. Phillips, W. B. Fariss, and R. C. Fariss. All the capital belonged to the two first, in equal portions, and each of them was entitled to forty per cent. of the profits; while R. C. Fariss had no interest in the capital, and received twenty per cent. of the profits. There was no partnership property, beyond the stock in trade. The real estate belonged to the old firm, Phillips & Fariss, who rented the stores to the new firm. W. B. Fariss controlled the real estate, above mentioned as belonging to Phillips & Fariss, during his life-time, and I did after his death. When the business of Phillips, Fariss & Co. was wound up, they owned a plantation in Bullock county known as the *German* place, containing 495 acres. The creditors of the firm were Mary Craik" [now Blanton, the complainant], and another person who held two notes, afterwards transferred to complainant. The partnership of Fariss & Phillips, as the witness then stated, was formed in 1856, and continued until the early part of the year 1869; it had no creditors, and owned no real estate, but held a mortgage on a small lot at Fort Deposit in Lowndes county. It was succeeded by the firm of Fariss, Phillips & McQueen, which continued until the latter part of the year 1869; and on the settlement of its business, its debts all having been paid, Phillips and Fariss were found indebted to McQueen, as recited in the deed of trust. The witness then testified: " My individual creditors were, F. Bugbee, to the amount of $6,000, with interest from April 1st, 1868; John W. McQueen, to the extent of $7,000; Mary C. Talbird and H. C. Talbird," whose debts were described. " I intended by the deed to devote my half interest in the property of Phillips & Fariss, my forty per cent. interest in the property of Phillips, Fariss & Co., after paying the debts of the respective partnerships, and my individual property therein described, to the payment of these debts; but nothing was said in the deed about the prior payment of the partnership debts. Fariss & Phillips owned no real estate, and Fariss, Phillips & McQueen owned none but the lot at Fort Deposit, which I, as surviving partner, have since sold and conveyed in the firm name, and have the money now in my possession, being $110. Fariss & Phillips

[Hatchett v. Blanton.]

and Fariss, Phillips & McQueen had nothing to do with the real estate of Phillips & Fariss, or Phillips, Fariss & Co." (The witness then described the debt which Mrs. E. C. Clements held against the firm of Phillips, Fariss & Co.) "The real estate on Market street in Montgomery, and the half of the store on corner of Market and Lawrence streets, and the lots fronting on Monroe street, were bought and paid for by the firm of Phillips & Fariss, with money belonging to said firm. W. B. Fariss and C. Phillips collected the rents of said property as assets of said firm, in which said Phillips and W. B. Fariss were equally interested. This continued until the death of said W. B. Fariss. The deeds to all of said property were made to C. Phillips and W. B. Fariss by their individual names, but the deeds themselves will show more accurately." [The deeds were not produced or proved.] "The note to F. Bugbee for $6,000, dated March 14th, 1862, and payable 1st April, 1862, signed by C. Phillips and W. B. Fariss, was given for money borrowed, years before, by the firm of Phillips & Fariss; and this note was given in renewal of the debt, to keep it from running out of date. The money borrowed was used by the firm of Phillips & Fariss, and for the said firm. The real estate was entered on the books of Phillips & Fariss, each piece being debited in a separate account, with its costs, and all expenses incident to it, and credited with all income from it."

On this submission of the cause, the chancellor decreed, "that this court will take jurisdiction of the trusts created by the deed of assignment to Geo. W. Stone and F. H. Warren, as trustees, a copy of which is attached to the original bill;" and ordered a reference to the register, to "state an account—1st, of the amount due to F. Bugbee by the partnership of Phillips & Fariss; 2d, of the amount due to the complainant and Mrs. E. C. Clements, as creditors of the firm of Phillips, Fariss & Co.; and, 3d, of the amounts due respectively to Bugbee, Mary C. Talbird, H. C. Talbird, and McQueen's administrator, as creditors of Cyrus Phillips; also, to ascertain and report what part of the real estate described in the bill is, in law or equity, assets of the partnership of Phillips & Fariss, what part is assets of the partnership of Phillips, Fariss & Co., and what part is the individual property of said Cyrus Phillips, and whether there are any other assets of either of said partnerships." Under this reference, the register reported the amounts due to the several creditors, being the debts described in the deed of trust, with interest thereon; and reported that the several city lots and stores, with the *Baldwin place*, were assets of the firm of Phillips & Fariss, and that the tract called the *German place* was assets of the firm of Phillips, Fariss & Co.; his conclusions as to these matters being based, as he stated, on the deed of as-

signment and the testimony of Phillips. Exceptions to the report were filed by McQueen's administrator, but were overruled by the chancellor, and the report was confirmed; and a final decree was then rendered, declaring that " the complainant in the original bill, and F. Bugbee as a creditor of Phillips & Fariss, complainant in cross-bill, are entitled to relief;" and ordering the register to sell the city lots and the *German place* (the *Baldwin place* having been already sold by the trustees), and appropriate the proceeds to the payment of the creditors of the two firms according to the priorities declared above.

The appeal is sued out by McQueen's administrator, who assigns as error the overruling of his exceptions to the register's report, the decree of the chancellor taking jurisdiction of the trust, and declaring the equities of the parties, and the final decree. Errors are also assigned by the infant heirs of W. B. Fariss, founded on various alleged irregularities in the proceedings, and each of the chancellor's decrees.

GUNTER & BLAKEY, for appellants.

D. S. TROY, *contra.*

BRICKELL, C. J.—By the assignment to Stone and Warrren, the debts secured are divided into three classes. The first enumerated are the debts of the partnership of Phillips & Fariss, of which firm the assignor, Cyrus Phillips, is the survivor. The second are the debts of the partnership of Phillips, Fariss & Co., of which firm, Phillips, and the assignor, Robert C. Fariss, are the survivors. The third are Phillips' separate debts. Reciting that the assignors intend the property assigned and granted shall be appropriated to the payment of the secured debts as a court of equity would marshal and appropriate it, the assignment distinguishes and denominates the property as of three kinds, referring to its ownership. The first is the property of the partnership of Phillips & Fariss, consisting of real estate which is particularly described; and thereof and therein Phillips grants and assigns an undivided one-half, to be sold, and the proceeds of the sale applied to pay one-half, or his proportion, of the debts of that partnership. The second is the property of the partnership of Phillips, Fariss & Co., consisting of real estate particularly described; and thereof and therein Phillips grants and assigns an undivided two-fifths, to be sold, and the proceeds of sale applied, in like proportion, to pay the debts of that partnership; and the assignor, Fariss, grants and assigns one undivided one-fifth to be sold, and of the proceeds of sale like application must be made. The third is the separate property of Phillips, consisting of real estate, in parts of which it is

[Hatchett v. Blanton.]

recited that he has the entire estate, and in parts it is recited that he has an undivided interest, the quantity of which is specified; and the whole is granted and assigned, to be sold, and the proceeds of sale applied to pay Phillips' separate debts.

The appellee, a creditor of the firm of Phillips, Fariss & Co., and not otherwise having any rights under the assignment, or in its subject-matter, filed this bill for a two-fold purpose; the first of which is, the enforcement of the trusts of the assignment for the benefit of the creditors of Phillips, Fariss & Co., and, as auxiliary thereto, the subjection of the undivided two-fifths of the real estate, the legal title to which had descended to the heirs of the deceased partner, William B. Fariss. The second purpose is the subjection of the real estate in which Phillips assigned, for the security of his separate debts, an undivided share or interest, to the payment of the partnership debts of Phillips, Fariss & Co., upon the ground that it was the property of that partnership, and primarily liable for the payment of its debts.

In its first aspect, to enforce the trusts of the assignment as to the real estate of the partnership of Phillips, Fariss & Co., and, as auxiliary and incidental, the subjection to the payment of partnership debts of the undivided two-fifths, the legal title to which had descended to the heirs of the deceased partner, William B. Fariss, it is not necessary to consider the equity of the bill, as it has not been questioned. The controversy is directed specially to the second aspect of the bill; and in this aspect we are of opinion the bill is not maintainable.

It can not be doubted, that when a debtor voluntarily assigns property for the security and benefit of creditors, if the creditors choose to accept the assignment, they must abide by its terms and provisions; they must take it as an entirety; they can not accept in part, and repudiate in part.—Perry on Trusts, § 596; Burrill on Assignments (3d ed.), § 479. The creditor may have rights with which the assignment, so far it confers rights upon others, is inconsistent. The assignment may derogate from, instead of extending to him the measure of right to which he is entitled. If that be true, he must elect, whether he will accept the assignment, or whether he will reject it, and stand upon the right he may have independent of it. He can not elect to claim under the assignment the rights given by it, and repudiate it so far as it passes rights to others which are inconsistent with independent, distinct rights to which he may be entitled. If it were true that the real estate in controversy is the property of the partnership of Phillips, Fariss & Co., primarily liable for the payment of partnership debts, the fact remains, that in it Phillips assigns and grants a specific interest for the security and payment of his separate creditors; in effect

28

declaring, that it is separate, not partnership property. The transfer and grant is as explicit, the use is as distinctly declared, as are the transfer and grant, and the use, under which the appellee deduces her right and claim. The assignor could create his own trustee, declare the quantity of estate or interest he would grant and assign, and the uses to which it should be appropriated. The creditors were as free to accept or reject the assignment. An accepting creditor must be content to abide by the uses declared for his benefit—he can not take them, and at the same time claim, in opposition to the assignment, property devoted to the use and benefit of other creditors. In *Pratt v. Adams* (7 Paige, 615), said Chancellor Walworth : " In the case of a voluntary assignment, where the assignor creates his own trustee, a creditor who comes in to claim a share of the fund under it, must take such share of it as the assignor intended to give him, and can not claim that which was intended to be given to the assignee in trust for others. A creditor of the assignor, whether provided for by the assignment or not, who wishes to repudiate the trusts of the assignment, on the ground that they are illegal, and a fraud upon the honest creditors of the assignor, must apply to set aside the assignment as fraudulent and void against him as a creditor, instead of coming in under the assignment as a preferred creditor or otherwise."

Nor can the general recital, that it is the purpose of the assignor to appropriate the property assigned as a court of equity would marshal assets, authorize the change or subversion of any use expressly declared by the assignment. The recital indicates, that it was the intention of the assignors to apply partnership property first to pay partnership debts, and separate property to pay separate debts. The significance and comprehensiveness of the recital is limited and qualified—a definite application is given to it, by the particular and express grants of the assignment. These indicate and declare the property which was deemed partnership, and that which was deemed separate property ; the uses are all expressed in reference to the declaration; and the property is devoted to the payment of debts in the order a court of equity would apply it, if, in case of insolvency, the court was marshalling separate and partnership assets. If, upon the theory that the assignors were mistaken in point of fact, or of law, in deeming property which is expressly granted and declared as of one class, the court should intervene, pronounce it of another class, nullify the uses declared, and appropriate the property to other uses, the assignment would not be carried into effect, but would, *pro tanto*, be set aside. There may be cases in which creditors have an equity to vacate the uses of an assignment, and to obtain a decree appropriating the property assigned to other and different uses. In all these

cases, the equity is independent of the assignment, and can not be claimed by a creditor who has accepted the rights and benefits the assignment confers.

Real estate, acquired with partnership funds, or on partnership credit, and for partnership purposes, in a court of equity is esteemed partnership property, subject to the payment of partnership debts, in priority of the separate debts of the several partners; and it is not material whether the legal title resides in the partnership, or in the several partners as tenants in common, or in the name of one partner only.—*Pugh v. Currie*, 5 Ala. 446; *Lang v. Waring*, 17 Ala. 145; *Andrews v. Brown*, 21 Ala. 437; *Little v. Snedicor*, 52 Ala. 167. Steering clear of all cases of fraud, or of the use by one partner, without the approbation of his associates, of partnership funds in the acquisition of real estate, the two facts must concur to constitute real estate partnership property—acquisition with partnership funds, or on partnership credit, and for the uses of the partnership. *Ware v. Owens*, 42 Ala. 212; *Owens v. Collins*, 23 Ala. 837; *Hoxie v. Carr*, 1 Sumner, 198; Parsons on Partnership, 365. The real estate now in controversy was purchased before the formation of the partnership of Phillips, Fariss & Co., and was not paid for with the funds of that partnership, but was paid for with the funds of the preceding partnership of Phillips & Fariss. It is possibly inferrible from the averments of the bill, and from the evidence, that upon a part of the real estate, the business of the partnership of Phillips, Fariss & Co. was carried on, as had been the business of the preceding partnership of Phillips & Fariss. The mere use of the property by the partnership, did not impress upon it the character of partnership property. It is not of uncommon occurrence, that a partnership uses the property of its several members, or of a preceding partnership. In the absence of an agreement that the property shall become joint property, its title and character is unchanged.— *Ware v. Owens, supra; McCrary v. Slaughter*, 58 Ala. 230. The existence of such an agreement, in this case, is not alleged or proved.

The identity of the partnership of Phillips & Fariss, with that of Phillips, Fariss & Co., a proposition the bill seems to assert, is not true, either as matter of law, or as matter of fact. The introduction or incoming of a new member into an existing partnership, in contemplation of law, works its dissolution, and the creation of a new partnership.—Parsons on Partnership, 34. The incoming partner is not liable for the debts or engagements of the former partnership, save so far as by express agreement he may assume liability; and in the property of the former partnership he acquires no other or greater interest than such as is by express agreement conferred.—Parsons on Partnership,

434.   If the property is carried into the new partnership, it becomes the property of that partnership—ceases to be, and is freed from all the liabilities to which it might have been subjected, as the property of the preceding partnership.   The termination of the partnership of Phillips & Fariss, and the creation of a new partnership, having a new style or firm name, with an additional member, the partners sharing in the profits and losses in differing proportions, was the intention of the parties by the introduction of Robert C. Fariss as a member.   Into the new partnership, as a part of its property, the real estate in contention was not carried ; and of it the partnership had no ownership, nor in it any interest, legal or equitable.

The chancellor decreed the real estate in controversy was the property of the partnership of Phillips & Fariss, and not the property of the several partners as tenants in common ; ordered its sale, and appropriated the proceeds of sale to the payment of partnership debts, in exclusion of the separate debts of the assignor, Phillips, for the security and payment of which, by the assignment, he had appropriated his undivided interest, the quantity of which is specified particularly.   A decree of a court of equity can not be supported, when assailed on error, unless it is founded upon, and conforms to the pleadings and proof in the cause.—*Maury v. Mason*, 8 Porter, 211; *Langdon v. Roane*, 6 Ala. 518.   If it were conceded, that it is shown by the evidence the real estate is the property of the partnership of Phillips & Fariss, and not of the partners as tenants in common, it is obvious, without vacating the uses declared by the assignment, it could not be appropriated to the payment of the partnership debts, in exclusion of the separate debts to which Phillips had appropriated his undivided share or interest.   There was no party before the court claiming in opposition to the assignment, or the vacation of any use declared by it.   There was no pleading assailing it, except so far as it may be regarded as assailed by the original bill ; and in that respect, as we have said, the original bill is not maintainable.   The hearing, it is true, was had upon an agreement that the answers of several of the defendants should be taken as cross-bills, and that severally they should be entitled to the relief which they could have obtained upon a cross-bill disclosing their respective interests.   If a cross-bill, seeking the vacation of the assignment in respect to this property only, could be entertained in the present suit, —a question we do not consider,—Bugbee, the sole creditor of the partnership of Phillips & Fariss, is the only party who could have maintained the cross-bill, if it would have been germane and appropriate to the subject-matter of the original bill. The assignment confers upon him the primary security from the proceeds of the sale of a part of the property which is assigned

[Hatchett v. Blanton.]

only by Phillips, and assigned as the property of the partnership of Phillips & Fariss. The answer found in the record does not repudiate, while it does not expressly accept the assignment, so far as it confers upon him this peculiar, exclusive right. If he intends the acceptance of this particular right, shutting out all inquiry by the other creditors secured by the assignment, whether he is entitled to it, there ought to have been in the answer a direct, open disclaimer of all rights under the assignment, and an assertion of the superior equity upon which he relies. There is not, in his answer, any such disclaimer, nor any indication of a purpose to claim in opposition to the assignment. There is no repudiation of the security proffered by the assignment, accompanied by the assertion of a superior and independent equity. If he had filed a cross-bill (and we are, in respect to the agreement found in the record, considering the case as if it had been filed), the facts upon which it was founded must have been averred in the answer. The answer is general, brief, and in it there is introduced no averment assailing the assignment, negativing its validity and operation as it is expressed, repudiating it, or asserting that it ought to be vacated. A cross-bill, departing from, and inconsistent with the answer, could not have been well entertained.—*Dill v. Shahan*, 25 Ala. 694; *Graham v. Tunkersly*, 15 Ala. 634.

In any aspect of the case, the decree in this respect is not founded upon, or in conformity to appropriate pleading, and can not be sustained.

Whether this specific property is partnership property, or the property of the several partners as tenants in common, is not a question now presented for decision; and if it were, there would be much of difficulty in reaching a satisfactory conclusion. Real estate may be acquired with partnership funds, and employed for the use or convenience of the partnership, without becoming necessarily partnership property. The partners may intend to hold it separately as tenants in common, and not jointly, as partners. They may intend to withdraw from the joint stock the funds invested in its acquisition, and a new investment, in which each partner will hold in severalty his share or interest. *Prima facie*, the condition of land is precisely that which is indicated by the muniment of title. The mere use of partnership funds, with the knowledge and approbation of the partners, in its acquisition, will not, of itself, repel the presumption arising from the muniment of title, or impress upon the land the character of partnership property. The inquiry is, what was the intention of the partners; and it must be solved from a consideration of all the circumstances attending the transaction.—1 Am. Lead. Cases (5th ed.), 602; Parsons on Partnership, 363; *Fall River v. Borden*, 10 Cushing,

458; *Tillinghast v. Champlin*, 4 R. I. 205; *Coder v. Huling*, 27 Penn. St. 84; *Hoxie v. Carr*, 1 Sumner, 174.

It is not necessary to pass upon other questions raised by the assignment of errors, which may not be presented in the further progress of the cause.

The decree of the chancellor must be reversed, and the cause remanded.

STONE, J., not sitting.